Meador v. Manlove.

---

No. 20,062.

GEORGE C. MEADOR et al., revived in the name of EUGENE B. MEADOR, as Executor, etc., et al., *Appellees*, v. ORLANDO MANLOVE et al., as Executors, etc., et al., revived in the name of L. R. SELLERS, as Administrator, etc., et al., *Appellants*.

### SYLLABUS BY THE COURT.

1. JURISDICTION—*To Declare Trust in Land in Another State.* Where a court of general jurisdiction has secured jurisdiction of the parties who hold the legal title to land in another state, it may render a judgment to impress a trust as to such land and order the trustees to execute a conveyance thereof; and the possible difficulties which may attend the enforcement of its judgment do not in any wise abridge its jurisdiction.

2. NONRESIDENT DEFENDANTS—*Voluntary General Appearance.* Where defendants who have been summoned personally and defendants who have been summoned by publication service join in a pleading or motion raising questions of law and questions of fact involved in the general issue of a cause, a general appearance is thereby entered by all the defendants.

3. ORAL AGREEMENT TO WILL PROPERTY—*"Heirs" to be Benefited.* Where a husband and wife agree to make wills of all their respective properties in each other's favor upon condition that the survivor of the two shall make a new will after the death of the first bequeathing the property received by such a will to the heirs of the deceased spouse, the heirs intended to be benefited thereby are the next of kin who would take under the statute of descents and distributions.

4. SAME—*Statute of Frauds—Statute of Trusts and Powers.* Neither the statute of frauds nor the statute of trusts and powers is a bar to the enforcement of an oral agreement to make a will when it has been fully performed by one of the parties, following the rule announced in *Gemmel v. Fletcher,* 76 Kan. 577, 92 Pac. 713, and *Smith v. Cameron,* 92 Kan. 652, 141 Pac. 596.

5. EVIDENCE—*Interest of Witness—No Disqualification.* There is no disqualification of witnesses in this state merely because such witnesses are directly or indirectly interested in the outcome of a lawsuit, but their interest may be shown as affecting their credibility. (Civ. Code, § 317.)

6. PRACTICE—*Findings—Conflicting Evidence.* Rule followed that the trial court's findings of fact, when based upon sufficient though disputed or conflicting testimony, will not be disturbed on appeal.

7. VARIANCE—*Pleading and Proof.* Where a judgment is not traceable to a variance between the pleading and the proof, and that variance is not brought to the attention of the trial court, the variance can not be made the basis of reversible error on appeal.

8. ORAL AGREEMENT FOR MUTUAL WILLS—*Performance by Wife—Breach by Husband—Land Held in Trust for Benefit of Wife's Heirs.* A husband and wife without children made an oral agreement to make wills of all their property in each other's favor upon condition that when one of them died the surviving spouse would make a new will bequeathing the property received by such a will to the heirs of the deceased spouse. In accordance with this agreement both made such wills. The wife died first. Thereafter the husband, in violation of· the agreement, made a will bequeathing all his property to his own kindred, including what he had received by his wife's will, and cutting off entirely the heirs of the wife, her parents. *Held,* that those who took title to the husband's property under the will made in breach of the agreement did so as trustees for the benefit of the wife's parents, and where the parents died during the progress of the litigation pertaining to the enforcement of such trust, the trustees will be decreed to hold the title of the property as a constructive trust for the benefit of the heirs and legal representatives of the wife's parents.

Appeal from Linn district court; CHARLES E. HULETT, judge. Opinion filed April 8, 1916. Affirmed.

*John A. Hall,* of Pleasanton, and *L. A. Jarman,* of Rushville, Ill., for the appellants.

*W. P. Dillard, J. I. Sheppard, J. G. Sheppard, Kate Sheppard,* all of Fort Scott, and *John O. Morse,* of Mound City, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This is an appeal from a judgment of the district court of Linn county, and in which it was decreed that certain beneficiaries of the will of David C. Manlove held title ·to forty acres of Illinois land in trust for the plaintiffs, and directing them to convey this land to plaintiffs; and in which it was also decreed that certain moneys and bank shares were held by David C. Manlove's executor in trust for the plaintiffs, and directing the transfer and delivery thereof to the plaintiffs.

An abridged statement of the facts is as follows: In 1896 David C. Manlove, a bachelor, of Prescott, Kan., married Emma C. Price, a widow, of Macomb, Ill. Each was possessed of considerable property and they had no children. Sometime during the earlier years of their married life they made an oral agreement that they would make wills conveying all their property to each other, and that after one of them had died the other would make a new will bequeathing to the heirs of the first that estate which would come to the second by the will of the one dying first. Thus, if David died first, Emma would take all by his will but in turn would bequeath the property received from him to his heirs. On the other hand, if Emma died first, David would take all by her will, but he would be-· queath to Emma's heirs the property received by him through Emma's will.

Accordingly, on September 11, 1899, David made a will bequeathing all his property to Emma; and on March 20, 1900, Emma made a will bequeathing all her property to David. Emma died on July 30, 1911, and her will was probated. David qualified as executor and took possession of the property as beneficiary. On June 3, 1912, David made a new will, after Emma's death, which wholly ignored the oral contract with his wife. He bequeathed his entire estate, including what he had acquired by his wife's will, to his own relatives, excepting one item to a personal friend. David died on August 11, 1912.

The original plaintiffs were the parents of Emma. They have died, and the action is prosecuted by their executor and their heirs and beneficiaries. The defendants are the sole surviving executor of the will of David and the beneficiaries of David's will.

The trial court made findings of fact and conclusions of law and gave judgment for the plaintiffs. The defendants present a formidable assignment of errors and support it with a brief of one hundred and fifty-nine pages and a reply brief of fourteen pages. These briefs display a comprehensive research and review of authorities and an industry which is marvelous, but space and time will only permit us to discuss the principal points which must control this appeal. These we will note as nearly as convenient in the order of their presentation.

1. Did the district court of Linn county, Kansas, have jurisdiction to render a decree declaring a trust in relation to the Illinois land and directing defendants to convey it to the plaintiffs? If the court had jurisdiction of the defendants, it seems settled by the authorities that it did have such jurisdiction. (*Fall v. Fall,* 75 Neb. 104, 120, 106 N. W. 412, 113 N. W. 175; affirmed in *Fall v. Eastin,* 215 U. S. 1. See, also, Notes in 69 L. R. A. 678 *et seq.,* and 27 L. R. A., n. s., 420, 421.) In *Manley v. Carter,* 7 Kan. App. 86, 52 Pac. 915, in which *Massie v. Watts,* 10 U. S. 148, and *Phelps v. McDonald,* 99 U. S. 298, 308, are cited, it was held that a court of equity having jurisdiction of the parties may render a judgment to enforce a trust as to land not within its territorial jurisdiction. We will not now concern ourselves as to how the district court may be able to enforce its decree nor what may be the status of the title to the land in Illinois if the decree directing its conveyance to plaintiffs is not obeyed. (7 R. C. L. 1062.) The defendants' only claim to the title to the land in Illinois is based on the will of a citizen of Kansas, a will made in Kansas and its terms modified by a Kansas court of competent jurisdiction, for such is virtually the effect of the judgment under review.

Since the court had personal jurisdiction of Orlando Manlove, both personally and as executor, and later, upon Orlondo's decease, it had personal jurisdiction of his executor and his heirs, no great difficulty is likely to arise in making the court's decree effective so far as relates to Orlando's undivided one-third interest in the Illinois land, whatever obstacles may arise in giving effect to the decree so far as the title is held in trust by the two nonresidents, Dora Rexroat and Louisa Crandall. But we will not wrong these defendants by assuming that they will be recalcitrant nor that they will attempt to

hold as their own that which has been lawfully decreed to belong to others.

2. Did the district court have jurisdiction of the parties? This question only relates to the appearance of the nonresident defendants, as personal service of summons was obtained on the others. Service by publication was made as to the nonresidents. This was challenged by a motion which was filed by all the defendants, residents and nonresidents, in which the defendants (all of them) moved the court—

"for an order quashing the service of summons by publication upon such of these defendants as are shown to be nonresidents of the State of Kansas by the records herein, so far as this action in any way relates to real estate not situated within the State of Kansas, and as to any personal action for damages or otherwise against them.

"And these defendants in support of this motion show to the court that Emma C. Manlove did not at the time of her death own any real estate whatever within the State of Kansas, but that the said Emma C. Manlove did at the time of her death own certain real estate in the State of Illinois, described in the affidavit herein filed by C. E. Crandall.

"These defendants show to the court that this court has not jurisdiction to render any judgment relating to the said Illinois land."

It will be noted that this motion raised nonjurisdictional questions. It was filed by all the defendants. It did not challenge the jurisdiction of the court over the persons of defendants nor of any of them. It did not raise the question that the action was *in personam* and that publication service was not authorized under the statute. It raised questions of law on the merits—the right of the court to give judgment concerning the Illinois land. It also raised a question of fact involved in the general issue—whether Emma Manlove owned any real estate in Kansas at the time of her death. It therefore becomes unnecessary to determine whether the nonresident defendants could have been brought into court by publication; for this motion contained other than jurisdictional questions, and as such it had the effect of a general appearance. (*Meixell v. Kirkpatrick,* 29 Kan. 679; *Frazier v. Douglass,* 57 Kan. 809, 48 Pac. 36; *Investment Co. v. Cornell,* 60 Kan. 282, 56 Pac. 475; *Abercrombie v. Abercrombie,* 64 Kan. 29, 67 Pac. 539; *Frazier v. Resor et al.,* 23 Ill. 88; *Kenyon v. Shreck et al.,* 52 Ill. 382; 3 Cyc. 511-513.)

Counsel for appellees furnish us another answer to this as-

signment of error.   Appellants' abstract does not show the date of the filing of this motion to quash.   Appellees point out that it was verified on July 24, 1913.   Prior thereto, one of defendants' counsel had entered an appearance consenting to an order reviving the action against the heirs and representatives of Orlando Manlove, who had died since the action was begun. Altogether it must be held that a general appearance was made for all the defendants and that the court had jurisdiction of all parties to the action.

3.   The next question concerns the "heirs" of Emma Manlove under the agreement with her husband, who were to receive Emma's property by the will which David agreed to make after Emma's death.   Who were these heirs for whose benefit this agreement was made?   The trial court found the facts to be that aside from David, Emma's husband, Emma's heirs were her father and mother.   The evidence warranted that finding.   In the absence of any evidence, the same result would follow under Kansas law.   It is plausibly contended that under Kansas law her husband was her sole heir.   But it is manifest that the bargain between Emma and her husband did not relate to their heirship of each other in the absence of a will by either.   They both clearly showed a determination not to die intestate.   The bargain between them was founded on the right of each to bequeath half their respective properties as they chose, and while each was desirous of bestowing all their property on the survivor of the two, each had also a well-defined and not unnatural inclination to provide that after the death of the survivor the heirs of each should receive their respective properties.   Of course this desire could have been accomplished by bestowing life estates upon each other, with remainders to next of kin; but with full confidence in each other, and not desiring to impose upon the survivor the technical responsibilities attaching to life tenancies, with frequent accounting to the probate court, they chose the method of disposing of their properties presented here.

4.   But it is said that the statute of frauds and the statute of trusts and powers bar all consideration of the alleged oral agreement between David and Emma.   It must be conceded that unless some clear and precise ground is established which by "operation of law" (Gen. Stat. 1909, § 3837) or "by im-

plication of law" (Gen. Stat. 1909, § 9694) takes this oral agreement out of these statutes, this contention is correct. It has often been regretted by the courts that exceptions have been made to the rule which requires agreements concerning important interests in land to be in writing. There is much to be said on both sides. It must suffice here to say that exceptions do exist, and that these statutes themselves recognize that there are such exceptions. (*Gemmel v. Fletcher*, 76 Kan. 577, 92 Pac. 713; 39 Cyc. 169, 177, 182, 186, 187.) Many such cases involving the recognized exceptions to the ordinary rule requiring such contracts to be in writing have been considered by this court. (*Long v. Duncan*, 10 Kan. 294; *Baldwin v. Baldwin*, 73 Kan. 39, 84 Pac. 568; *Gemmel v. Fletcher*, supra; *Bichel v. Oliver*, 77 Kan. 696, 95 Pac. 396; *Heery v. Reed*, 80 Kan. 380, 102 Pac. 846; *Wooddell v. Allbrecht*, 80 Kan. 736, 104 Pac. 559; *Bless v. Blizzard*, 86 Kan. 230, 120 Pac. 351; *Nelson v. Schoonover*, 89 Kan. 388, 131 Pac. 147; *Holland v. Holland*, 89 Kan. 730, 132 Pac. 989; *Smith v. Cameron*, 92 Kan. 652, 141 Pac. 596; *Eadie v. Hamilton*, 94 Kan. 214, 146 Pac. 323; *Holland v. Holland*, ante, p. 169, 155 Pac. 5.)

The gist of all these cases is that where an oral contract concerns interests in land which would ordinarily be invalid under the statute of frauds or the statute of trusts and powers has been performed by one of the parties, equity will give effect to the contract. This is sometimes done on the theory that the other party is equitably estopped to plead these statutes. Sometimes it is done by impressing the property which was the subject matter of the contract with a trust "by implication of law" in favor of the party who had performed his part of the contract. Sometimes the trust has been impressed in favor of third parties—those for whose benefit the contract was made.

In the case before us, there was full and complete performance of the oral contract by Emma Manlove, so far as it was to be performed unless she outlived David. Relying upon his promise to bequeath all her property to her heirs if she died before he did, she waived her absolute right to will them half her property or otherwise to bestow it upon them during her lifetime. Nothing remained unperformed on her part at her death. And while the oral contract was abundantly proved by parole testimony, there were letters written by David after

his wife's death which are highly probative.  He wrote to
Eugene Meador, Emma's brother, the plaintiff's executor, as
follows.

". . . I do now say and I mean it at my death—by will—Emma's
folks that treat me with respect will be remembered with more than what
the dear woman ever brought into our savings, *for I think Emma would
have done as I wanted her to do after she had proposed the plan."*

The words which we have italicized strongly corroborate
the oral evidence of the agreement between David and Emma
notwithstanding the equivocal language in the earlier part of
the quotation.  Elsewhere he wrote:

"The 40 acres you refer to you said to me in Macomb you thought
Emma had left it to me my lifetime and said nothing against it.  You
also expressed a desire to own it some day.  It is not impossible to so
arrange that you may some day get it. . . . As I said when there,
at my death, double the amount of the 40 will go back to Emma's
people." . . .

We have not quoted largely from the letters; and triers of
fact, whether court or jury, might find inconsistent language
in these letters.  To us they read as if they were knowingly
addressed to one who knew of the agreement between David
and Emma and indicated a half-formed intention on David's
part to break his agreement, or at least that it would only
be carried out if he were treated right, or that Emma's people
would only get Emma's property at his death if his aged father-
in-law would give him the share of the elder Meador's estate
which would have gone to Emma if she had survived her father.

Since the evidence of the parole agreement is clear and con-
vincing, and since Emma's part of it was performed, under
the precedents which we have cited and which could be indefi-
nitely amplified from the decisions of other states, it must be
held that neither the statute of frauds nor the statute of trusts
and powers will defeat this action.  Nor can it be said that
there is any weakness in the evidence as to the terms of the
agreement, even if tested under all the rules urged by ap-
pellants.

5.  Were plaintiffs' witnesses competent?  The chief wit-
nesses were Emma Manlove's brothers and sisters and the
husband of a sister.  Of course they were interested.  Their
parents, the original plaintiffs, were very old.  Naturally the

property would descend ere long to these witnesses. The interest of these witnesses might affect the credence to be given their testimony but it could not affect their competency.

"No person shall be disqualified as a witness in any civil action or proceeding by reason of his interest in the event of the same, as a party or otherwise, . . . but such interest . . . may be shown for the purpose of affecting his credibility." (Civ. Code, § 317.)

6. Certain findings of fact are assailed in appellants' assignment of errors. We have carefully examined these and find that they were supported by competent and sufficient testimony. The "weight of the evidence," where it may have been conflicting, was the concern of the trial court, and its findings a court of review can not disturb.

7. One other point requires notice. On a motion of defendants, plaintiffs were required to make their petition more definite and certain, particularly with reference to the date of the agreement between Emma Manlove and her husband. The original petition alleged that this agreement was made on or about March 1, 1900. The amendment pleaded another and apparently supplemental agreement necessitated by Emma's discovery or belief that David had only willed her a life estate; and that this agreement "was made after March 20, 1900, and prior to December, 1906, and that these plaintiffs are unable to fix the date of the making of said oral agreement with any more certainty." This presents no serious difficulty. The findings of fact do not show this supplemental agreement. The decision does not rest on it. The variance, if it may be called a variance, was not challenged at the trial. It is too late to raise it for the first time on appeal. (*Bailey v. Gatewood*, 68 Kan. 231, 74 Pac. 1117; *Grimshaw v. Kent*, 75 Kan. 834, 89 Pac. 658.)

So much for the principal errors assigned. With the aid of the briefs of counsel and our own studies we have examined many cases analogous to the one at bar where oral agreements to make wills have been enforced. usually as done here by recognizing the technical legality of the mere naked title vested by wills or conveyances made in violation of such agreements, but declaring such title holders to be mere trustees for the parties equitably entitled to the property. Such trusts are termed constructive trusts, trusts *ex maleficio,* trusts by impli-

cation of law, involuntary trusts, trusts *ex delicto,* and the like. To extend this opinion by citations would merely be to repeat what was so well set forth by the late Mr. Justice Graves of this court in *Gemmel v. Fletcher,* 76 Kan. 577, 92 Pac. 713. See *Ransdel v. Moore,* 153 Ind. 393, 53 N. E. 767, 53 L. R. A. 753, where the leading cases of England and America are col-- lated and discussed. (See, also, Notes in 8 L. R. A., n. s., 698; 31 L. R. A., n. s., 176; 33 L. R. A., n. s., 996; also Note in 106 Am. St. Rep. 95.)

No difficulties of any sort attend the trial court's disposition of the property located in Kansas.

The judgment is affirmed.