No. 21,286.

GLADYS PRICE STAHL, *Appellee*, v. JAMES HENRY STEVENSON et al., *Appellants.*

### SYLLABUS BY THE COURT.

1. ORAL PROMISE—*To Leave Share of Property to Heir—Not Within Statute of Frauds.* A promise of an ancestor that he will at his death leave to an heir presumptive the share of his estate to which such heir, in the event of his then dying intestate, would be entitled under the statutes of descents and distributions, is not a contract for the sale of an interest in lands within the meaning of the statute of frauds, notwithstanding the ownership of real estate by the ancestor when the promise was made and at the time of his death.

2. SAME—*Capable of Performance Within a Year.* Such a contract is not one that is not to be performed within a year, within the meaning of the statute of frauds.

3. SAME—*To Leave Property to Heir—Consideration Release of Interest in Life Insurance—Specific Performance.* The holder of a life insurance policy in which his wife, who had since died, was named as beneficiary, desired to collect its surrender value, and for this purpose was required by the insurance company to obtain a release from her heirs. To induce the daughter of a deceased son to sign such release, he promised that if she would do so she should receive at his death one-third of his estate, which was the share she would have inherited had he then died intestate. She accepted the proposition and signed the release. He died leaving a will which had been executed before the transactions referred to, giving the entire estate to others. *Held*, in an action by the granddaughter of the testator against the beneficiaries under the will to recover a third of the estate, that whether or not the plaintiff's signature was necessary to give her grandfather a valid claim against the company for the whole value of the policy, her affixing it to the release at his request was a sufficient consideration to support a contract, and notwithstanding that

any possible interest she had in the insurance policy was trivial in comparison with the value of the property she claimed, it cannot be said (in view of the fact that what her grandfather promised her was what she would have received had he made no will, and that her controversy is not with him, but with those whose claims are based on her disinheritance) that a court of equity should refuse to enforce the contract as against good conscience.

4. SAME—*Rejected Evidence—Nonprejudicial.* Rejected evidence held not to have been of sufficient importance to warrant a reversal, assuming that it should have been admitted.

Appeal from Reno district court; FRANK F. PRIGG, judge. Opinion filed February 9, 1918. Affirmed.

*Frank L. Martin, C. M. Williams,* both of Hutchinson, and *L. S. Ferry,* of Topeka, for the appellants; *Van M. Martin,* and *John M. Martin,* both of Hutchinson, of counsel.

*A. C. Malloy,* and *F. Dumont Smith,* both of Hutchinson, for the appellee.

The opinion of the court was delivered by

MASON, J.: John R. Price died on February 24, 1913, at the age of eighty-two, leaving a will dated July 21, 1910, by which a life interest in all his property was given to his two daughters, Jane Price Stevenson and Cordelia Price Stevenson, and the fee to the children of one of them. Gladys Price Stahl, the only surviving child of a deceased son of the testator, brought an action against the beneficiaries to recover one-third of the estate, on the ground that in 1912 her grandfather had promised that she should have it, the promise being founded upon a valuable and sufficient consideration. She recovered a judgment, from which the defendants appeal.

1. The promise referred to was not in writing, and the defendants urge that it is rendered unenforceable by the clause of the statute of frauds requiring written evidence of contracts for the sale of lands, or any interest therein. (Gen. Stat. 1915, § 4889.) A contract to devise specific real estate, or to leave by will specific property, a part of which is real estate, is within this provision of the statute. (*Nelson v. Schoonover,* 89 Kan. 388, 391, 131 Pac. 147, and notes therein referred to; Browne on Statute of Frauds, 5th ed., § 263; 20 Cyc. 235.) The text last cited concludes with the statement: "However,

an oral agreement that part of one's property shall go to the promisee, which does not specify what property or its nature, will support an action." Five cases are appended in a note, but in none of them is a decision reached which is directly in point. In the first one the contract involved was that of a father to give to a daughter (at once and not by will) such a sum as would place her on equal footing with his other children; it was held to be too indefinite for enforcement, but a dictum was added to the effect that the agreement was not one for the conveyance of real estate. (*Adams and Wife v. Adams*, 26 Ala. 272.) The second case (*Lee, Adm'r, v. Carter*, 52 Ind. 342) involved a promise to devise a tract of land. It turned upon part performance; the statute of frauds discussed was that relating to contracts not to be performed within a year; and the opinion was qualified by a later decision. (*Wallace, Administrator, v. Long, Guardian*, 105 Ind. 522.) In the third case the agreement was in writing, but was said to have been enforceable if it had been oral. (*Sutton et al. v. Hayden et al.*, 62 Mo. 101.) In the fourth an oral contract for mutual wills was upheld on the ground that the promisor sought to be charged had only personal property—no real estate—at the time of her death. (*Turnipseed v. Sirrine*, 57 S. C. 559.) In the fifth case it was said that the question whether the parol contract involved was one for a sale of land did not arise. (*Quinn v. Quinn*, 5 S. D. 328.). The plaintiff was the adopted son of a testator, and claimed a share of the estate under an agreement that he was to inherit a just and full part of it. The court used this language, which shows a situation quite analogous to that here presented: "The plaintiff does not seek to establish his right to inherit the estate of said Quinn, or his portion thereof, by a parol contract, but to show that Quinn had agreed not to deprive him of his rights as heir under the order of the court; not that Quinn should convey or will property to him, but that he would not deprive the plaintiff of his right as heir under the legal proceedings. The contract, therefore, set out in plaintiff's complaint, is not one relating to the sale of land, or of an interest therein, in the sense that such a contract is used in the statute." (p. 334.)

Two additional cases are cited in 1913 Cyc. Annotations p. 2256. But in one of them the promisor had no real estate

either when he made the agreement or at the time of his death (*Hull v. Thoms*, 82 Conn. 647), and in the other the decision turned upon part performance. (*Dalby v. Maxfield*, 244 Ill. 214.)

It seems to this court that there is just ground for a distinction, with respect to the applicability of the statute of frauds, between an agreement by the owner of real estate to devise it to a particular person, and an agreement that at his death he will leave to such person a certain proportion of his estate, of whatever it may happen to consist. The former necessarily has to do with the transfer of realty; the latter has no necessary connection with any specific property. The circumstance that when the promise is made the promisor happens to own some real estate, to which no reference is made, does not seem a suitable test of the enforceability of the contract; and the question whether or not his assets, which may have been continually shifted from one form to another, chance to include some realty at the time of his death, appears to furnish even a less satisfactory criterion. But perhaps that matter in its general aspect need not be determined, because of the special features of this particular case. At the time John R. Price is found to have made the agreement sued upon, his sole heirs presumptive were his two daughters and the plaintiff, each of whom would have received, in the event of his death intestate, one-third of his estate. The agreement of the plaintiff's grandfather was essentially negative. His promise was not necessarily that he would make a will in her favor, but that he would not disinherit her, or reduce the proportion of the estate to which she would be entitled as an heir—that her interest to that extent should be protected in any will he might make. We do not regard this as a contract for the sale of an interest in lands within the meaning of the statute of frauds, notwithstanding the ownership of real estate by the grandfather both at the time of making the promise and at the time of his death. No specific property was within the contemplation of the parties. The agreement was quite analogous, so far as relates to the statute of frauds, to a promise to include in a will a legacy for a fixed sum, or for an amount equal to a fixed proportion of the estate. If her grandfather had made a will ordering

the sale of the property and the payment to the plaintiff of one-third of the proceeds in excess of his indebtedness and the expenses of administration, that might have been regarded a substantial compliance with the contract. While the action is for the recovery of a third of the specific property left by plaintiff's grandfather, that results from an incidental and not an essential feature of the arrangement. Upon these considerations we conclude that the agreement relied upon was not one for the sale of an interest in lands, and was not within the part of the statute of frauds relating thereto.

2. A contract of the character here involved is not an "agreement that is not to be performed within the space of one year from the making thereof," within the meaning of that phrase as used in the statute of frauds. (20 Cyc. 201; Note, 4 Ann. Cas. 174.) By the death of the plaintiff's grandfather within a year it might have been fully performed within that time; there was no stipulation to the contrary; and that clause of the statute does not apply. (*A. T. & S. F. Rld. Co. v. English,* 38 Kan. 110, 117, 16 Pac. 82.)

3. The defendants assert that the evidence does not support the finding that the contract relied upon was made. There was evidence tending to show these facts: John R. Price had a life insurance policy issued in 1873, in which his wife, Margaret J. Price, was named as beneficiary. The policy appears to have been lost. The wife of the insured having died, he wished to obtain the surrender value, $2,142.40. The insurance company was not willing to make payment without the authorization of all the heirs of Margaret J. Price. A release was prepared, acknowledging the receipt of the amount, and authorizing it to be paid to John R. Price. The signing of this instrument by the plaintiff is the consideration relied upon by her for the promise sued upon. Her mother testified that John R. Price said to her: "You tell her [the plaintiff] to sign this paper, it isn't very much. You tell her to sign it and she will have her third of everything I have, just the same as if her father was living. She will get her father's share; you tell her so." The witness added that he said this over and over; that "it was on condition that she would sign the paper." The plaintiff testified that this was communicated to her and that she signed the paper because of her grandfather's promise.

There was other evidence bearing on the matter, but we regard this as sufficient to uphold the finding, that the contract was made.

The defendants urge that the consideration was insufficient. We regard it as legally capable of forming the basis of a contract. The plaintiff was under no obligation to sign the instrument, and whatever the actual rights of the insured may have been as against the company, and whether or not the plaintiff had any interest whatever in the policy or its proceeds, her signature enabled him to realize upon it without controversy or litigation, and an agreement to pay for the accommodation was not rendered nonenforceable by the want of a valid consideration. The situation in this regard is analogous to that presented where an act which one is under a legal obligation to perform is made a sufficient consideration for an agreement by the existence of a controversy on the subject. (*Odrowski v. Swift & Co.*, 99 Kan. 163, 162 Pac. 268.) The defendants question the existence of any evidence that a claim was made by the insurance company that John R. Price was not entitled to the money. There was evidence that he asserted that the policy was payable to him when he attained the age of eighty years, and the company conceded that this would be true when he was eighty-five; that the policy was lost and the company had no copy of it or other evidence of its contents, and refused to pay it without the execution of the release. We think this sufficiently shows the existence of a dispute as to the rights of the parties under the policy. The trial court, in a statement of the reasons for the decision, referred to the requirement of the company as calling for a release by the heirs of the insured. This is criticised on the ground that the requirement was for a release by the heirs of the person named as beneficiary. The inaccuracy does not appear to be important. The same persons were indicated, whichever phrase was used. It was admitted that John R. Price conceded that it would be easier to get a release from them than to have any further controversy about it. The exact contents of the policy are not established, and the actual legal rights of the parties are therefore uncertain.

A more serious attack upon the consideration, however, concerns its adequacy to support an action in the nature of

Stahl v. Stevenson.

one for the specific performance of the contract. The defendants invoke the rule that the granting of specific performance lies to a considerable extent in the discretion of the court, and argue that it would be inequitable to allow a recovery here because thereby the plaintiff would obtain a third interest in an estate said to be worth $50,000, in consideration of her having signed a relinquishment to a claim amounting in all to but little over $2,000, in which she had no more than a one-sixth interest, if she had any. Stated in this way the disproportion between what the plaintiff parted with and what she seeks to recover in return for it seems very striking. But against this several considerations are to be noted. The act of the plaintiff in signing the release presumably gave her grandfather the immediate possession of the entire amount, which may have been a matter of great importance to him. And what he promised her in return was not to give her any part of the property which he then possessed, but to see that at his death she should receive one-third of his then estate, which might be of equal or greater value, but which also might be very much less. Moreover, the share promised her was just what the law would have given her had he then died intestate, and what in all probability she would sometime receive unless he should see fit to disinherit her or diminish by will the share which would come to her, in case of his intestacy. The evidence indicated that there had previously been something of an estrangement between the plaintiff and her grandfather, and the arrangement entered into between them had something of the aspect of a reconciliation. In view of the circumstances and the relations of the parties, we do not think it can be said that the agreement between them was unconscionable and that a court of equity on that account should refuse to enforce it.

Nor can the contract be regarded as an unjust infringement on the rights of the defendants. Until the death of John R. Price they had no interest in the property. Anything they should collectively receive in excess of two-thirds of the estate would be in virtue of his favoritism towards them. There was no inequity towards them in his agreeing that the plaintiff should receive the part of the estate which would come to her by operation of law unless he should prevent it by affirmative

action, however insignificant may have been the personal benefit which he received in return for such agreement.

In the Kansas case most strongly relied upon as authority for refusing the enforcement of this contract it was said:

"While inadequacy of price is not sufficient of itself to avoid a decree for performance, it is a circumstance which will be taken into consideration with all the facts in determining whether a court of equity is called upon to afford relief. . . . The doctrine is well established that before a court of equity will enforce performance of a contract of this kind it must appear to have been fairly entered into without any sort of advantage or imposition—must, in other words, appeal to the conscience of the court and compel its discretion." (*Shoop v. Burnside,* 78 Kan. 871, 876, 877, 98 Pac. 202.)

We do not discover anything in the facts of the present case that suggests overreaching or imposition. The proposition on which the contract was based, according to the evidence, came from the plaintiff's grandfather and was urged upon her somewhat strongly. She appears to have been entirely ignorant as to what rights she might have in the policy, and so far as the record shows may have been equally ignorant as to what the value of her grandfather's estate might be. She had no previous connection with the matter and was under no obligation with respect to it. In these respects the situation is obviously very different from that presented in *Kelley v. Caplice,* 23 Kan. 474, and *Caplice v. Kelley,* 27 Kan. 359, where one who had sold an insurance policy was denied the benefit of an unconscionable bargain she had driven by refusing to sign a release necessary to the effectiveness of the sale until she had been promised a large part of the proceeds of the policy for so doing. We approve the ruling of the trial court allowing the enforcement of the plaintiff's contract.

4. Several of the defendants offered to testify that John R. Price had made statements to them to the effect that he had given the plaintiff's father so much financial aid that he felt under no obligation to provide for her in his will. The offer was rejected by reason of the statute relating to testimony concerning transactions with persons since deceased. (Gen. Stat. 1915, § 7222.) Complaint is made of the ruling on the ground that the plaintiff, by introducing portions of depositions of the witnesses, had waived the objection. We do not discover that the evidence introduced by the plaintiff bore

upon the transactions covered by the rejected testimony. In a subsequent brief it is suggested that the evidence of one of the witnesses covered statements made to another person, and should have been admitted on this ground. That feature of the matter does not appear to have been presented to the trial court, and therefore is not available here. It is contended that as to one of the witnesses the statutory rule did not apply because, although made a defendant, his only interest in the matter arose from his being the husband of one of the devisees. That in itself is not a disqualification. (*Cadwalader v. Pyle,* 95 Kan. 337, 148 Pac. 655.) However, the court stated that the testimony would be admitted if the witness would disclaim interest, and he declined to do so, saying that the offer was made in behalf of the other defendants, not of himself. Assuming that the evidence should have been received, we do not think it of sufficient importance to justify a reversal. The affidavit of the witness which was presented at the new trial contained a statement that John R. Price had promised his daughters to leave all his property to them in consideration of services they had rendered in caring for him. It is contended that this should have been received as showing a contractual right to the property. That was not an issue in the case, not having been pleaded. The daughters of the testator after his death obtained a decree to certain real estate, on the ground that he had promised it to them, but the claim that they had been promised the entire property was not made in the answer. The affidavit also set out that John R. Price had complained of ill treatment by the plaintiff and her mother, and stated that he had lost money through her father, and for this reason, and because her mother had plenty of money and would naturally provide for her, he was going to leave what little he had left to his two daughters and the children of one of them. This may have had some bearing on the attitude of her grandfather toward the plaintiff. But the fact that he had said that he had lost money through her father was brought out by other witnesses, and his will recited that on account of what he had done for her theretofore he did not consider that she had any further claim upon his bounty. In view of this the rejected evidence does not appear sufficiently vital to require the setting aside of the judgment.

The judgment is affirmed.