No. 30,809.

LAONA D. SMITH, *Appellee*, v. BLAINE NYBURG, OTTICE LAVERNE NYBURG, OVERILLE ORIEON NYBURG and OPAL A. LANGSTON, *Appellants*.

(16 P. 2d 493.)

Opinion filed December 10, 1932.

*D. F. Stanley, L. E. Weltmer,* both of Mankato, and *Thomas Robertson,* of Franklin, Neb., for the appellants.

*A. W. Relihan, T. D. Relihan, J. T. Reed* and *Miles Elson,* all of Smith Center, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This is an appeal from a judgment of the district court of Smith county overruling a demurrer to a petition in which plaintiff sought to state a cause of action predicated on an oral contract between plaintiff and her parents in their lifetime in which they bound themselves that she should have a child's share of their property after their deaths.

In plaintiff's petition she set out the status of the litigants—that she is a resident of Franklin, Neb.; that the three principal defendants are her brothers, two of whom are residents of Smith county and one a nonresident of Kansas; and that the fourth defendant, Opal A. Langston, is the daughter of Donnie May Nyburg, a deceased sister of plaintiff and the other defendants.

Plaintiff alleged that she and her three defendant brothers and her niece, Opal A. Langston, were the only heirs of their parents, John and Lydia Nyburg (grandparents of Opal A. Langston), now deceased; that plaintiff was the oldest child of this family; that prior to her eighteenth birthday she became engaged to be married and she and her betrothed had made plans and preparations to marry when she should reach her majority (at 18 years under the statute then extant).

Plaintiff further alleged that when she attained her majority, about January 15, 1895, her father and mother expressed their desire that she should abandon her plans to marry at that time and to forego her marriage until she became twenty-one years of age.

"That at said time her said parents, John Nyburg and Lydia F. Nyburg, [orally] proposed to the plaintiff that if she would forego and abandon her said

marriage until she became twenty-one years of age and would continue to live with them at their home until she arrived at that age and assist them in the farming operations and help to perform the household duties, help to care for, train and rear the younger children and furnish her parents with her society, love and companionship, that they and each of them would agree that they would so arrange their affairs during their lifetime, by will or otherwise, that she would not be denied, but would receive a full child's share of all the real and personal property which they or either of them own at the time of their death."

Plaintiff alleged that upon consideration of this proposition offered by her parents she orally accepted it, and pursuant thereto she for the specified time abandoned her marriage, and—

"Did remain with her said parents until she arrived at the age of twenty-one years, and did, on her part fully perform all of the said duties required of her under the terms of said oral contract."

Plaintiff further alleged that her father, John Nyburg, died on June 1, 1923, and left surviving him his widow, Lydia F. Nyburg, mother of plaintiff and her three defendant brothers, and his granddaughter, Opal A. Langston; and that Lydia F. Nyburg died on January 4, 1931.

It was further alleged that at the time of his death John Nyburg was the owner of certain described lands in Smith county, Kansas, and in the adjacent county of Franklin, Nebraska, aggregating about 730 acres; that in contravention of the contract between John Nyburg and wife and this plaintiff, and after full performance by her, Nyburg devised all his property, both real and personal, to other heirs than plaintiff, except a bequest of $1,000 to her.

A copy of the will was attached to plaintiff's petition. It devised a life estate in all the testator's property to his wife, Lydia F. Nyburg. He devised the remainder interest in his Franklin county, Nebraska, land, about 130 acres described, to defendant Blaine G. Nyburg. He similarly devised Smith county lands, about 200 acres described, to defendant Ottice Laverne Nyburg; and other Smith county lands, about 400 acres described, to defendant Overille Orieon Nyburg. These three defendants were tenants of the lands devised to them, and these devises in remainder were subject to the same rental charges which they had been paying the testator. Such rental charges were to be paid to their mother, life tenant under the will, as long as they should continue to rent the lands thus devised. The will also made bequests of $1,000 to plaintiff and $500 to Opal A. Langston and other provisions of no present concern.

The will forbade testator's three sons to mortgage or incumber the lands devised to them until they should severally attain the age of forty years; and it also provided that whatever of the testator's personal property should be left after the death of his wife was bequeathed to plaintiff and her three brothers, share and share alike. One provision of the will reads:

"Item 9. Whereas, my three sons named in this instrument are at present tenants on my lands, and it is my desire that they continue as tenants thereon, so long as they desire to do so, and farm said lands in a good workmanlike manner and pay as rent therefor, one-third share of all crops grown thereon, on the Kansas lands, delivered in the cribs on the farms, and one-half of all crops grown thereon on the Nebraska lands, delivered in the cribs on the home place."

Plaintiff's petition also alleged her parents wholly failed to perform their agreement to arrange the disposition of their property so that she would receive a child's share thereof; that her three defendant brothers were in possession of the lands separately devised to them and that they claimed to be the owners thereof; and that by virtue of her oral contract with her parents, which she had fully performed, she was entitled to a moiety of the one-fifth thereof, and entitled to have her one-fifth interest set off to her by partition in kind or in the proceeds thereof.

Defendants demurred to this petition on the ground that it failed to state facts sufficient to constitute a cause of action against defendants or any of them. This demurrer was overruled and defendants bring that ruling here for review.

Counsel for defendants submit for our consideration an elaborate and scholarly brief on the general subject of oral agreements concerning the disposition of property by deed, will, or by intestacy, and under what circumstances they may be enforced. This court has perused this brief with interest, although it is measurably formulated on the assumption that some of our decisions which largely induced the trial court's decision, like *Stahl v. Stevenson*, 102 Kan. 447, 171 Pac. 1164; id. 102 Kan. 844, 171 Pac. 1164, are of questionable soundness, or like *Rooney v. McDermott*, 113 Kan. 18, 213 Pac. 631; id. 121 Kan. 93, 246 Pac. 183, which is altogether wrong and should be overruled.

Of course it does happen occasionally that the unsoundness of a rule of law is demonstrated by its application to succeeding cases, or by the lapse of time and changed conditions of society, and that

it should therefore be overruled by the court or altered by the legislature. But the decision of this court in *Stahl v. Stevenson,* supra, was not a maverick in the judicial wilderness. While the law books reveal a plethora of decisions showing contrariety of judicial opinion on the binding force of an oral promise to make provision for the promisee on the death of the promisor, we regard the question as settled in this jurisdiction, not only by *Stahl v. Stevenson,* supra, but by well-considered decisions prior and subsequent to it. (*Anderson v. Anderson,* 75 Kan. 117, 123, 88 Pac. 743; *Nordboe v. Frye,* 107 Kan. 291, 191 Pac. 282; *Braden v. Neal,* 132 Kan. 387, 295 Pac. 678.) See, also, Mr. Justice Harvey's collation of our leading cases in *Woltz v. First Trust Co.,* 135 Kan. 253, 259-261, 9 P. 2d 665. Moreover, however the rule of law announced in these familiar Kansas cases may irk the legalistic sensibilities of some eminent critics of our local jurisprudence, it cannot be denied that justice has been accomplished by it, and that end is or should be the acme of all juridical disquisition.

With these precedents of our own in mind, the arguments in support of the demurrer to plaintiff's petition and the objections to the trial court's ruling thereon can readily be disposed of. The oral contract alleged could have been performed by plaintiff's parents by a conveyance to take effect at their deaths, by their joint or several wills, or by both of them dying intestate. The parents might have had an understanding between themselves that the survivor of them should see to it that their joint obligation to plaintiff was discharged. This oral contract did not deal with specific real property; its terms were that "they [the parents] and each of them would so arrange their affairs during their lifetime, by will or otherwise, that she [plaintiff] . . . would receive a full child's share of all the real and personal property of which they or either of them [might] own at the time of their death." Such a contract is not within the statute of frauds. (*Stahl v. Stevenson,* supra, syl. ¶ 1; *Braden v. Neal,* supra.) Moreover, full performance as alleged by plaintiff would relieve the cause of action from the inhibitions of the statute of frauds. In *Meador v. Manlove,* 97 Kan. 706, 156 Pac. 731, it was said:

"Neither the statute of frauds nor the statute of trusts and powers is a bar to the enforcement of an oral agreement to make a will when it has been fully performed by one of the parties, following the rule announced in *Gemmel v. Fletcher,* 76 Kan. 577, 92 Pac. 713, and *Smith v. Cameron,* 92 Kan. 652, 141 Pac. 596." (Syl. ¶ 4.)

So far as can be discerned from the pleadings it does not appear that the personal services and sacrifice of plaintiff, which were the consideration for the contract, were of a character which could be fairly compensated in money. What yardstick could we lay hold of to measure the filial service of an eldest daughter to her parents in aiding them to rear a family of younger brothers? What standard of financial compensation should she receive for the sacrifice involved in the postponement of her own marriage for three years? We know of none, and none is cited for our perusal. (See *Schoonover v. Schoonover*, 86 Kan. 487, 121 Pac. 485; *Lyons v. Lyons*, 114 Kan. 514, 518, 220 Pac. 294.)

It is not a bar to plaintiff's action that defendants may not have known of their parents' obligation to their sister. Plaintiff's theory of this case is that by the obligation of her parents the lands devised to defendants subject to the life interest of their mother are subject to a trust which equity impresses thereon for the benefit of their sister, as the only practical means of giving her the relief to which she is entitled in good conscience—assuming for the nonce that the allegations of her petition are true.

Another point urged against plaintiff's cause of action is that her contract for the postponement of her marriage was one in violation of public policy and therefore not a valid consideration for her parents' promise to her. Whatever may be said against a contract in absolute restraint of marriage, and the old law books had a good deal to say on that subject, the later authorities are now generally agreed that the rule which denounced all and every restraint on marriage as against public policy went too far. In Merwin's Equity and Equity Pleading, 282, it is said:

"It is to be noticed, however, that not all restrictions are unlawful, but those only which amount to an absolute prohibition of marriage in the particular case. Thus, it is well settled that a condition that the donee shall not marry . . . before arriving at a certain age . . . is a perfectly good condition."

And see notes in 49 L. R. A., n. s., 606, 615, 627, 633; L. R. A. 1915 D 1065; and *Grimison v. Board of Education*, ante, p. 511, 16 P. 2d 492.

Some courts take the view that even·if such a contract is in restraint of marriage, yet where the plaintiff has conformed to its restraining provisions and has performed other lawful services under the contract the other party to the contract cannot avoid the ob-

·ligation to which he has bound himself. (*Fletcher v. Osborn*, 282 ·Ill. 143; *King v. King, Ex'r, et al.*, 63 Ohio St. 363.) This court can ·discern no sound rule of public policy which was violated in the contract whereby this plaintiff, then a mere girl of eighteen years, bound herself to defer her contemplated marriage until she should attain the age of twenty-one years and to perform the filial and other services required of her in the interim.

· Another point urged by defendants is the lapse of time ere this action was begun. They direct attention to the fact that plaintiff's father died on June 1, 1923, and this action was not begun until November 17, 1931. However, plaintiff's mother did not die until January 4, 1931, and the real question is, When did plaintiff's cause of action accrue? When was she to receive a child's share of her parents' property? At the death of one of her parents? No. The parents' promise was that plaintiff "would receive a full child's share of all the real and personal property of which they or either of them own at the time of their death." Defendants predicate an argument on the fact (not shown by the pleadings) that their mother did not own enough property to make good the promise she and her husband had made to the daughter so many years before. We do not know that. Mayhap plaintiff did not know it. The petition does not say so. We cannot say that plaintiff should have been forewarned by her father's will that the obligation of 1895 would be breached by both her parents and that she should have precipitated some action promptly after her father's death and the probate of his will (if it was probated), and that she should have harassed her aged mother with a lawsuit of some sort before the old lady herself was through with her property. We could not approve such a course on the part of plaintiff. There was nothing due her under agreement with her parents until after both of them were dead. Consequently questions of lapse of time, laches and the like, go out of this case.

Another suggestion against the ruling of the trial court relates to the $1,000 bequest in the father's will. We do not regard that point as squarely before us, but see Anno., Agreement to Leave Property to Another, in 69 A. L. R. 102 *et seq.*

Yet another point urged in support of the demurrer is that part of the lands sought to be impressed with a trust in favor of plaintiff are situated in Nebraska, outside the jurisdiction of the district court of Smith county. That problem will have to be dealt with in its time and season. The Smith county district court has obtained

jurisdiction of the parties and of the subject matter so far as concerns the Smith county lands; and under our decisions (and also those of Nebraska and of the United States as we understand them) a decree can be formulated which will impress the Nebraska lands with a trust in plaintiff's favor if she eventually prevails in this action. In *Meador v. Manlove,* 97 Kan. 706, 709, 156 Pac. 731, it was said:

"Did the district court of Linn county, Kansas, have jurisdiction to render a decree declaring a trust in relation to the Illinois land and directing defendants to convey it to the plaintiffs? If the court had jurisdiction of the defendants, it seems settled by the authorities that it did have such jurisdiction. (*Fall v. Fall,* 75 Neb. 104, 120, 106 N. W. 412, 113 N. W. 175; affirmed in *Fall v. Eastin,* 215 U. S. 1. See, also, Notes in 69 L. R. A. 678 *et seq.,* and 27 L. R. A., n. s., 420, 421.) In *Manley v. Carter,* 7 Kan. App. 86, 52 Pac. 915, in which *Massie v. Watts,* 10 U. S. 148, and *Phelps v. McDonald,* 99 U. S. 298, 308, are cited, it was held that a court of equity having jurisdiction of the parties may render a judgment to enforce a trust as to land not within its territorial jurisdiction. We will not now concern ourselves as to how the district court may be able to enforce its decree. . . . (7 R. C. L. 1062.)"

Counsel for defendants propound one more question for our determination in this review, if we should hold that the trial court's ruling on the demurrer was correct. That question is whether a child's share in this lawsuit is to be one-fifth or one-tenth of the property involved. Defendants argue that it should be one-tenth, because in the absence of the father's will the mother would have been entitled to one-half and the five children and their representatives [per stirpes] would each have been entitled to one-tenth. That contention, however, is a continuation of the erroneous idea that plaintiff was only to look to her father's estate for the discharge of the obligation of both her parents. But we must repeat—that was not the parents' obligation. When the promise was made there were five children. In the usual course of nature, and undoubtedly in contemplation of the parties, both parents would die first and leave five children; consequently it is too clear for cavil that a child's share, to which plaintiff is entitled, is one-fifth of "all the real and personal property of which they or either of them own at the time of their death." That was the contract.

The other objections urged against the ruling of the trial court have all been considered but need no further discussion.

The judgment is affirmed.