No. 34,816

GEORGE M. PATON et al., *Appellants*, v. DAVID PATON, JR., et al., *Appellees*.

(103 P. 2d 826)

Opinion filed July 6, 1940.

*William J. Wertz, Vincent F. Hiebsch, Forest V. McCalley, Milton Zacharias,* all of Wichita, and *J. T. Boyle,* of Arkansas City, for the appellants.

*E. J. Taggart,* of Wellington, *W. L. Cunningham, D. Arthur Walker* and *Wm. E. Cunningham,* all of Arkansas City, for the appellees.

The opinion of the court was delivered by

THIELE, J.: This was an action wherein plaintiffs sought to have themselves decreed to be the owners of certain real and personal property by reason of an alleged contract made by their respective ancestors with the ancestor of the defendants. The trial court sustained demurrers to the petition for the sole reason the cause of action was unenforceable by reason of the statute of frauds.

The petition discloses that the plaintiffs comprise three groups, who are the children and heirs, respectively, of George Paton, Jr., John Paton and Ellen Paton Davidson, all deceased, and that the defendants are the children of David Paton, deceased, and legatees and devisees under his will of which the defendant, J. H. Jester, is the executor. The petition also discloses that the common grandfather, George Paton, and his wife, Ellen Morton Paton, settled on a farm in Sumner county about 1871. They had seven children. James died in 1883. George, Jr., died in 1902. John died in 1930 and Ellen Paton Davidson died in 1894, and the plaintiffs are the children of the last three named. David died in 1938, and his children are defendants. Maggie Paton Fernald died in 1936 and plaintiffs and defendants, except the executor, are her only heirs at law. Another daughter, Jean Paton Dryden, died leaving surviving Jean Dryden, who later died without issue. Dates of the deaths of the last two are not shown. George Paton, Sr., died September 28, 1896. His wife died about 1892. The petition alleges that at the time of his death George Paton, Sr., was past eighty years of age, and that for several years previous to the death of himself and his wife, their youngest son, David, and his wife, made their home with the parents; that for a number of years previous to their deaths the parents were in poor health, were of weak and feeble mind and were easily influenced, and while in such condition their son, David, on December 18, 1888, procured from them a deed to 320 acres of land in Sumner county; that after the death of the mother the father became more enfeebled, very hard of hearing, was unable to see and was in very poor health and easily influenced by those about him, and while in this condition L. S. Paton, wife of David Paton, on October 4, 1895, procured from the father a deed to 160 acres of land in the same county, which she conveyed to her husband on June 4, 1896; that on October 4, 1895, the father, while in very poor health, physically and mentally, and easily influenced, made a

deed to David Paton conveying 320 acres of land in Sumner county. Copies of the several deeds attached to the petition show that each one was recorded immediately after its date. It was further alleged that at the time of his death George Paton, Sr., owned ten thousand bushels of wheat which David Paton sold for $10,000; that he owned about 125 head of cattle which David Paton sold for $6,000; that he owned twenty-five horses worth $3,750, and about one thousand bushels each of oats and corn on which no value is placed, and that he had $5,000 in cash, and that all of that personal property and cash was taken by David Paton; that at the time of the death of George Paton, Sr., he left as his only heirs, his sons, George, Jr., John, David, his daughter, Maggie, and his minor grandchildren, John Davidson, Jr., and Agnes, the children of his deceased daughter Ellen, and that none of them had actual knowledge at the time of the father's death that the son David had procured the deeds above mentioned. Shortly after the father's death, David asserted claim to all of the personal property and it was discovered that the deeds had been made. During January of 1897, George, Jr., John and Maggie and the husband of the deceased Ellen, the mother of the two minors, had a meeting and discussed the matter of the father's estate, the method by which David had procured the deeds and the way he was taking charge of the personal property, as a result of which George, Jr., acting for all, demanded of David that he distribute their share of the estate to them; that David told George, Jr., he knew his father's condition when the deeds were made and he would let them know later what he would do. That shortly thereafter George Paton, Jr., John Paton and John Davidson, father of the minors, employed a firm of attorneys at Wellington, Kan., to institute a suit to set aside the deeds, to get possession of the personal property and to distribute the estate. There is no allegation as to what advice the attorneys gave the clients. That shortly after the consultation with the lawyers, David Paton stated to George Paton, Jr., that he could make a settlement with Maggie Fernald if he could make a compromise and settlement with George and John and the children of his deceased sister Ellen, and—

"That at said time David Paton further stated to George Paton, Jr., that if George Paton, Jr., John Paton, and John Davidson, acting for his two minor children, would not bring any action or litigation to contest or set aside the deeds or to distribute the estate of George Paton, Sr., deceased, and would allow him, David Paton, to stay on the land and to have possession of all the personal property and continue the management thereof, that he, David Paton,

would manage and look after the estate to the best of his ability. That he would make a settlement with their sister, Maggie Fernald. That at his, David Paton's death, he would leave a will devising and bequeathing all of the property of every kind, nature and description that he had, including all of the George Paton, Sr., estate and all the accumulations therefrom, in equal shares to the children of his brother, George Paton, Jr.; to the children of his brother, John Paton; to the children of his deceased sister, Ellen Paton Davidson; and to the children of David Paton, so that each family would receive one-fourth of all the property of every kind, nature and description that he, David Paton, might have at the time of his death."

And that the same proposition was made by David to John and to the father of the minors; that the offer was accepted and George Paton, Jr., John Paton and John Davidson, acting for his minor children, forbore and refrained from bringing a lawsuit against David Paton and permitted him to operate and look after the property and David Paton managed the same until his death on December 20, 1938, and the other parties did not bring "a lawsuit to set aside the deeds and to compel distribution of the real estate and personal property of George Paton, Sr." It was further alleged that in accordance with the oral contract David Paton made a settlement with his sister, Maggie Fernald; that David Paton continued to operate and manage the estate of George Paton, Sr., and "from the proceeds derived from the sale of the personal property and cash on hand at the time of the death of George Paton, Sr.," David purchased a tract of 158 acres in Sumner county on November 24, 1897; that thereafter, and on December 30, 1897, "from the proceeds of the personal property left by George Paton, Sr.," David purchased another 160 acres of land; that on December 20, 1901, "from the proceeds of the property left by George Paton, Sr.," David purchased another 160 acres, and "from the proceeds of the property left by George Paton, Sr., and from the accumulations therefrom" on June 15, 1920, David purchased real property in the town of Oxford and on April 18, 1928, he purchased real property in the city of Wellington; that at the date of death of David Paton on December 20, 1938, the estate created by the oral contract entered into in May, 1897, amounted to the eight quarter-sections of land and the two pieces of city property mentioned, all valued at over $47,000, as well as bonds, notes and mortgage notes and cash, all valued at over $106,000.

It was further alleged that notwithstanding the oral agreement mentioned, David Paton made and left at his death a will under

which "he devised and bequeathed all of the property of every nature, kind and description that he had at the time of his death, including the property left by George Paton, Sr., and the accumulations therefrom to his three sons . . . the defendants above named," and that the making and leaving of that will breached the oral contract mentioned.

It was further alleged that will was admitted to probate and J. H. Jester was appointed executor thereof and was in possession of the personal property and refused to deliver any of that property to plaintiffs; that the defendants claim and are in possession of the real estate and exclude the plaintiffs from the possession thereof; that by reason of all the foregoing plaintiffs are beneficiaries of the oral contract alleged and rightful and equitable owners of an undivided three-fourths interest in and to all of the property, real and personal, except such as may be necessary to pay the debts of David Paton. The prayer was that plaintiffs be adjudged to be such owners with consequential relief not necessary to detail.

The only question presented by the appeal is whether the contract pleaded is unenforceable under the statute of frauds. In their brief, appellants have included in their statement of facts a number of statements not found in the petition, and their brief is to some extent based on these extraneous statements. Appellees call attention to these statements, and expand their arguments to meet many of them. The result is that our attention is directed to over one hundred decisions of this court and other appellate courts and numerous citations of other authorities. Limit of time and space preclude detailed reference to all of those decisions and authorities.

Strictly speaking, we do not have before us any question of the sufficiency of the petition to state a cause of action were the contract relied on one that was in writing, but only the question that the contract, not being in writing, is not enforceable under the statute of frauds, which for our purposes reads:

"No action shall be brought whereby to charge a party . . . upon any contract for the sale of lands, tenements, or hereditaments, or any interest in or concerning them, or upon any agreement that is not to be performed within the space of one year from the making thereof. . . ." (G. S. 1935, 33-106.)

The latter part of the statute, as quoted, is only of interest if it be determined the contract as pleaded is not within the first part thereof. If the contract is within that part dealing with real estate or any interest therein, we are not further concerned other than to

determine whether by reason of part performance the contract is enforceable.

The general rule is that if a parol contract is entire and indivisible and a part of it is within the statute of frauds, the whole contract is unenforceable, although part of it is not covered by the statute. . (See annotation 71 A. L. R. 479, 480.) And if an agreement to devise real property and to bequeath personal property is within the statute so far as the real property is concerned, the entire contract, if indivisible, is within the statute. (See 27 C. J. [Frauds, Statute of, §§ 170, 404], pp. 209, 318; 25 R. C. L. [Statute of Frauds, § 190], p. 586.) The rules above mentioned find support in the decisions of this court, among which are: *Becker v. Mason,* 30 Kan. 697, 2 Pac. 850; *Dennis v. Kuster,* 57 Kan. 215, 45 Pac. 602; *Nelson v. Schoonover,* 89 Kan. 388, 391, 131 Pac. 373; *Kiser v. Richardson,* 91 Kan. 812, 139 Pac. 379, Ann. Cas. 1915D 539; *Stahl v. Stevenson,* 102 Kan. 447, 448, 171 Pac. 1164. Although cases may be found dealing with tests for determining separability or lack of it, we find it unnecessary to discuss them. Passing for the time being the question whether the contract was one to devise real estate specifically or one to devise all the estate of which the real estate was only an incident, it clearly appears from the petition that the subject matter of the contract included both real and personal property; that the consideration was to forego institution of an action to set aside deeds and of proceedings to compel distribution of personal property; that David Paton was to stay on the land and have possession of the personal property, and that at his death he would leave a will devising and bequeathing all of the property in the George Paton, Sr., estate and all the accumulations thereof to the parties to the contract. Even though the original property was severable, the accumulations were not, and it is clear from the petition that part of the after-acquired real estate was purchased with proceeds of *personal* property, another part from proceeds of property, which must be construed to include real property, as the pleaders deliberately omitted the word "personal," while the other after-acquired real estate was purchased from the proceeds of property of the estate and accumulations therefrom, and it requires no reiteration of the allegations to show that the contract treated all of the property, real and personal, as a unit. We need not pursue this phase further. Real and personal property were inextricably bound together and the contract was indivisible. Under the rule above referred to, it was a contract within the statute of frauds.

Appellees devote some space in their brief to the question of forbearance to bring suit to set aside the deeds, the argument being predicated on the fact there is no allegation to show the deeds could be set aside for any reason, and no allegation that the parties to the alleged contract ever had any legal advice to that effect, etc. Were the contract separable, we should devote some time to discussion. It does appear that George Paton, Sr., left a considerable amount of personal property. Whatever merit there may have been with reference to any proposed action to set aside the deeds made by George Paton, Sr., in his lifetime, it is clear that on his death his personal property should have been divided among his heirs, and if one of them retained possession of it to the injury of the others, the others had a cause of action to compel administration or distribution. We cannot say that it was necessary for them or their successors in interest to allege that some person learned in the law had so advised them. The allegations warrant the inference they knew of their right to a distribution of personal property and were insisting on it. It appears from the allegations that the other children and the father of the grandchildren made demand on David Paton for the distribution of this personal property, and that the alleged contract, in its entirety, was based on their not bringing any action to compel distribution. We note, in passing, appellee's statement there was no showing that John Davidson was legally authorized to act for his children. He was their natural guardian, they have never complained of what he did, and their joining in the instant action is a ratification. Further, it does not appear when the alleged agreement was made that David Paton raised any question that John Davidson did not have adequate power and authority to represent his children. Even if it be granted that the allegations with respect to setting aside the deeds to real estate are faulty, that was only one phase of an indivisible contract. The agreement not to bring the action to compel distribution of the personal estate was consideration for the contract.

Appellants contend the contract was not within the terms of the statute for the reason that it did not provide for the devise of specific real estate, but for the disposition of the property to be left by the promisor at the time of his death. Appellee, in support of the trial court's ruling, directs our attention to authorities from other jurisdictions, holding the test is inclusion of real estate whether specifically devised or not. The force and effect of the general rule has

been somewhat modified in this state. (See, among others, *Nelson v. Schoonover,* 89 Kan. 388, 394, 131 Pac. 147; *Stahl v. Stevenson,* 102 Kan. 447, 171 Pac. 1164, id. [on rehearing], 102 Kan. 844, 171 Pac. 1164; *Braden v. Neal,* 132 Kan. 387, 389, 295 Pac. 678, which recognize the exception that an oral agreement that part of one's property shall go to the promisee, but which does not specify what property, or its nature, will support an action.)

The petition before us did not state a case within the exception. The allegation of the contract is quoted above. Regardless of other property, David Paton was to stay on the real estate deeded to him by his father and at his death was to devise it in equal shares to the promisees named.

Did performance take the contract out of the statute, and should it be enforced? At this time, all we have before us is a petition and, for present purposes, its allegations are considered as facts.

In *Schuler v. Rehberg,* 145 Kan. 176, 64 P. 2d 571, action was brought to specifically enforce an alleged oral contract under which the promisor was to leave the promisee a certain farm for services to be performed. This court said:

"This is largely a fact case. In the perhaps too many cases of this general character which have reached this court, each different from the other on the facts, the rules of law relating to them have become fairly well settled. (See *Woltz v. First Trust Co.,* 135 Kan. 253, 259-261, 9 P. 2d 665.) While it would be better for all parties if the contract such as is relied upon here were reduced to writing in all cases, the fact remains that is not always done. There are or may be bona fide cases in which oral contracts of this character are made and fully performed on one side, but not on the other. In such instances the contract may be enforced by an action in specific performance. The statute of frauds is not a bar to such enforcement." (p. 179.)

In *Woltz v. First Trust Co.,* 135 Kan. 253, 9 P. 2d 665, plaintiffs sought to enforce a contract under which they were to have decedent's property at her death. In that opinion, Mr. Justice Harvey reviewed many of our decisions. It was there said:

"In order to sustain his right to recover plaintiff must plead and show that there was a contract and compliance therewith on his part under which, in equity and good conscience, he should possess and enjoy the property sought, as against those who would otherwise be entitled to it. 'The contract is the foundation of plaintiff's right to recover.' (*Dreher v. Brumgardt,* 113 Kan. 321, 214 Pac. 419.) It is essential that the contract be clearly established, that there has been performance on the part of the promisee, and that the claim is equitable." (p. 259.)

In *Meador v. Manlove,* 97 Kan. 706, 156 Pac. 731, a similar situation was involved. It was there said:

"The gist of all these cases is that where an oral contract concerns interests in land which would ordinarily be invalid under the statute of frauds or the statute of trusts and powers has been performed by one of the parties, equity will give effect to the contract. This is sometimes done on the theory that the other party is equitably estopped to plead these statutes. Sometimes it is done by impressing the property which was the subject matter of the contract with a trust 'by implication of law' in favor of the party who had performed his part of the contract. Sometimes the trust has been impressed in favor of third parties—those for whose benefit the contract was made." (p. 712.)

And it was held:

"Neither the statute of frauds nor the statute of trusts and powers is a bar to the enforcement of an oral agreement to make a will when it has been fully performed by one of the parties, following the rule announced in *Gemmel v. Fletcher,* 76 Kan. 577, 92 Pac. 713, and *Smith v. Cameron,* 92 Kan. 652, 141 Pac. 596." (Syl. ¶ 4.)

(See, also, *Richard v. Kilborn,* 150 Kan. 579, 95 P. 2d 545.) Under the contract as pleaded, the obligation of the promisees was to forego bringing any action or litigation to contest or set aside the deeds or to distribute the estate of George Paton, Sr., and to allow David Paton to stay on the land and to have possession of all the personal property and to continue the management thereof. It is alleged they performed that obligation fully. Viewing the situation as it existed when the contract was made, George Paton, Sr., left personal property alleged to have been worth approximately $25,000, which should have been divided in fifths to each surviving child and in tenths to each surviving grandchild. The total interest of the parties to the contract—and Maggie Fernald was then interested— was approximately $20,000 in the personal property. The value of the real estate at the dates it was deeded to David Paton, or at the date of the father's death in 1896 is not shown, but at the time of David's death in 1938 the real estate which had formed part of his father's estate was valued at about $28,000. In the absence of other allegations, we may assume it was no more valuable when George Paton, Sr., died. It would thus appear the personal estate was almost one-half in value of all the property in controversy when the agreement was made, and that the right to forego possession of the distributive shares of the personal estate was substantial, and for aught that now appears the contract was not inequitable.

Some space in the briefs is devoted to a discussion of family settlements and whether the doctrine of estoppel applies against the promisor and his representatives. There is no need to discuss these.

For reasons hereinbefore set forth, we think the contract alleged in the petition is not unenforceable by reason of the statute of frauds, and that the trial court erred in sustaining the demurrers to the petition.

The order of the trial court sustaining the demurrers is reversed and the cause remanded with instructions to overrule them.