No. 32,380

Jacob B. Gelphman, *Appellant*, v. Morris Gelphman et al.,
*Appellees.*

(50 P. 2d 933)

Opinion filed November 9, 1935.

*L. T. Cannon,* of Humboldt, *W. H. Anderson* and *G. M. Lamer,* both of Iola, for the appellant.

*Frederick G. Apt, Alfred R. Enfield,* both of Iola, and *Joseph Cohen,* of Kansas City, for the appellees.

The opinion of the court was delivered by

Wedell, J.: This was a suit for an accounting and dissolution of a partnership. Plaintiff appeals from the judgment of the trial court.

Plaintiff, Jacob B. Gelphman, and the defendants, three brothers, were engaged in the coal and junk business at Iola for the past twenty years. The partnership owned certain lots which were held jointly by the four partners. One lot was held in the name of two of the defendant partners. There is no contention, however, that all of the lots are not in fact the property of the partnership. The

partnership also owns coal bins or sheds on leased property on the railroad right of way. Each of the partners devoted his full time to the partnership business, and each drew equal amounts therefrom until sometime in July, 1932, at which time the plaintiff withdrew from active work, and during the month of August, 1932, went to Kansas City for an operation. In August or September he returned to Iola and continued to visit the office, although he took no active part in the business. He was paid out of the partnership funds amounts equal to those received by each of the defendants, until April, 1933. Plaintiff at this time withdrew from active participation in the partnership and went to Kansas City. The partnership, both prior to and after plaintiff's withdrawal therefrom, dealt in the coal and junk business. There are other facts about which some of the issues in this case revolve. They will be treated separately in connection with our discussion of appellant's contentions of error.

The issues were joined under the allegations of a petition, answer and reply. Briefly stated, the petition in substance alleged that each of the four partners held an undivided one-fourth interest in the partnership. The petition asked for an accounting, dissolution and for such relief *as would be proper under all the circumstances.* The answer in substance was that an accounting would disclose that nothing was due and owing to plaintiff, that the present market value of the partnership property was about $11,000, and its liabilities about $5,000, and that an accounting would disclose that all of plaintiff's interest in the partnership had been wiped out. Defendants prayed for accounting, dissolution and for judgment decreeing plaintiff to have no right or interest in the partnership assets and that plaintiff be required to execute and deliver to the defendants a conveyance of all of his interest in the real estate. The prayer of defendants' answer was for such relief *as to the court seemed just and equitable in the premises.* The reply consisted of a denial of the allegations of defendants' answer which were at variance with the allegations of the petition and stated that the value of the partnership property was approximately $20,000, and its liabilities less than $5,000, and that a proper accounting would show plaintiff's interest to be in excess of $3,000.

The trial court appointed a referee, who made findings of fact and conclusions of law. It is considered unnecessary to set out those

findings here. Specific complaint concerning them will be treated later.

Plaintiff filed exceptions to the findings of fact and conclusions of law, and also a motion asking for substituted findings of fact and conclusions of law. The exceptions and motion were overruled, except as to finding of fact number thirteen, which was:

"The referee finds from the evidence introduced that the *good will* of said business is without value."

The memorandum of the trial court as to this item was that the partnership was a going concern and "that the *value of the property* as a going concern, *including good will,* is reasonably worth the value of $1,000." The referee was ordered to make this and his other findings conform thereto. Thereafter the trial court adopted amended findings of fact and conclusions of law, and they were made a part of the journal entry. In the journal entry the finding as to good will reads:

"The referee finds from the evidence introduced that the *good will* of the said business is of the value of $1,000."

On the findings of fact and conclusions of law made by the referee, as amended, judgment was rendered. It allowed plaintiff a small money judgment and directed defendants to pay the money into court, and also ordered plaintiff to execute and deliver a deed to defendants covering his one-fourth interest in the partnership real estate. The judgment further provided that in the event such deed was not delivered within ten days after defendants paid the money into court, the judgment should constitute a good and sufficient conveyance of plaintiff's interest in the real estate. It further provided that all of plaintiff's right, title and interest in and to the personal property of the partnership should be transferred to defendants, upon the payment of the money judgment into court.

From this judgment plaintiff appeals. His contentions of error may be summarized under three propositions:

First, the partnership property, real and personal, was evaluated upon the basis of a bankrupt concern instead of being evaluated as a going concern.

Second, the referee and the court erred in finding that defendant partners had advanced certain moneys to the partnership which had not been repaid.

Third, all of the property should have been sold and the net proceeds distributed in accordance with the interest of each partner.

We shall treat these complaints in the order stated.

1. Under the first contention of error we shall consider the value placed on the real estate. Plaintiff fixed the value at $5,000. Mr. Bowlus, a banker at Iola, a witness for defendants, stated that a financial statement given to his bank in March, 1933, by the partnership estimated the value of the real estate at $1,500. He stated that he was familiar with the real estate and believed under existing conditions $1,500 would be a fair average estimate of the value. John Reuter, who had been in the real-estate business in Iola for thirteen years, stated that he had examined the real estate owned by the partnership. He placed a value on each piece separately. His total estimated value for all the real estate was $2,200. The referee adopted this valuation of $2,200. Appellant stresses the fact that plaintiff's testimony further showed that the assessed valuation of all the real estate was only $100 less than the $5,000 valuation placed thereon by plaintiff. He further urges the fact that the real-estate agent testified that he had not personally sold any lots equipped and used for similar purposes, and that he did not know of other lots in Iola available for similar use. The record does not disclose that any objection was made to the testimony of the real-estate agent. The weight to be given his testimony was for the determination of the referee. There still remained the testimony of Mr. Bowlus, which placed the value at $1,500. It should be noted that the question whether the partnership was bankrupt or a going concern did not arise in connection with the valuation placed by any of these witnesses on the real estate. The value of the real estate was determined upon conflicting testimony, and the finding of the referee is conclusive here.

We shall turn next to the value placed upon equipment and stock on hand. Here again we have a conflict of testimony. The additional complaint, however, is that defendants' witnesses evaluated this property on the basis of a bankrupt concern instead of evaluating it as a going concern. This is a more serious question and requires some examination of the record. Mr. Harry testified that he and Burnside made an appraisement of this property in 1933. Harry was vice-president and assistant secretary of the Steel Products Company of Iola. Burnside was a structural engineer for the same company. Harry stated that he was familiar with the market quotations and prices of scrap iron, scrap rope and other materials

and with the value of machinery used in the junk business, having followed it for some twenty years. He stated that they appraised the property as if the business were in bankruptcy. They did not take into consideration the fact that it was a going concern, and estimated the market value of all the property for immediate sale. He said the value of physical property does not change in bankruptcy or out. The appraisement was made at the fair, market value of the property. They appraised all of the property as if it were going to be sold as of that date, and in making this appraisement were guided by no other consideration than to give the fair and reasonable value of these properties as of the date the appraisement was made.

Burnside identified an exhibit containing the itemized appraisement and stated that it represented the value of the partnership plant as appraised by him and Harry, and that it was a fair and reasonable value of the real and personal property of the partnership. He stated that their appraisement concerned only the physical value of the material and did not take into account the value of the business as a going concern. The foregoing testimony of these witnesses is not set out in question and answer form. This evidence is a summary of what appears in the abstract and counter abstract.

We construe the testimony of these witnesses to be that the cash market value of this property is the same, on immediate sale, whether the partnership is bankrupt or whether it is a going concern. Since the property was not sold, the evidence was competent because it fixed the present cash market value of the property. A determination of its cash market value was necessary as a basis for immediate final settlement between the partners. Appellant's contention is that the valuation of the partnership property as a going concern would be higher than the valuation of it as a bankrupt concern. There may be merit in the contention as an abstract proposition. We are obliged to deal with the evidence. There is ample evidence here that the value of this kind of property is the same whether sold immediately as the property of a bankrupt concern or immediately as the property of a going concern. In fact, we find no evidence to the contrary. There was, therefore, a basis for the evaluations made by the referee and approved by the court.

2. Appellant's second contention of error is that the referee and the court erred in finding that defendant partners had advanced certain moneys to the partnership which had not been repaid.

The referee found that the following advancements were made by the defendant partners to the firm: $497 by Leon, $375 by Morris and $300 by Sumner, and that none of them have been repaid. We have carefully examined the record. Leon's advancements to the firm were through checks in September and November, 1933. The check from the firm to him in the sum of $368 is dated July 11, 1933. This check from the firm is prior to the advancements and hence could not have been given in part payment of those advancements. The brother, Morris, stated he had made his advancements in cash during the period from July to September of 1933. No evidence appears in the record before us tending to show repayment of this advancement. Sumner stated that he had made his advancement by check in the sum of $300, dated April 29, 1933, which check is in evidence. The firm paid him $300 by check on July 26, 1933. From this evidence alone it would appear that this advancement might have been paid. He testified that it had not been repaid. There is no record of cross-examination concerning the checks from the firm to the defendant partners. It appears that these checks were discovered after the trial among partnership papers and records which, by agreement, had been offered and accepted in bulk. What evidence, if any, there may have been in those miscellaneous records concerning the subject of advancements or any other phase of this lawsuit, this court cannot say. The referee believed defendants' evidence concerning the advancements and that they had not been repaid. The trial court approved his findings. There is nothing here for review on that subject.

3. Appellant's third contention of error, as previously stated, is that all of the property should have been sold and the net proceeds distributed in accordance with the interest of the partners.

Diligent search of the record discloses no objection to the method of distribution employed. Judging from the entire procedure and the introduction of evidence on values, it appears that this very method of settlement was contemplated by all parties concerned. This case was plainly tried upon the theory of fixing the value of the partnership property as a basis for distribution. No objection appears to have been made concerning that theory. This court has previously held that after a case has been tried upon a definite theory, appellant cannot here raise any question as to the correctness of such theory. (*Abramson v. Wolf*, 138 Kan. 856, 28 P. 2d

975. See cases therein cited.) Had either party entertained the notion that the partnership property was to be first sold and the proceeds divided in accordance with the decree in accounting, the introduction of evidence on the subject of value was a useless jesture. Had appellant's present objection been made at the trial, the court might have ordered the sale of the property, but it was not obliged to do so. It was competent for the court, sitting as a court of equity, to adjudge the disposition of the partnership property, to order conveyances of partnership property and to make division of partnership assets. (*Apple v. Smith*, 105 Kan. 732, 185 Pac. 903; *Apple v. Smith*, 106 Kan. 717, 190 Pac. 8. See authorities cited in these two cases.) See, also, *Meador v. Manlove*, 97 Kan. 706, 156 Pac. 731.

Appellant urges that the case of *Hatfield v. Tucker*, 115 Kan. 367, 223 Pac. 291, is authority for the proposition that partnership property must be sold and the proceeds thereof distributed. With that contention we cannot agree. That case in no manner conflicts with the rule announced in the cases of this court. In the Hatfield case the petition prayed for an accounting and *for the sale of the partnership property.* The parties in that case stipulated that all the partnership property should be sold, and jointly requested the court to order the sale. In the instant case we fail to find a request by either party to sell the property. The prayer, while not a part of the pleading, shows that plaintiff did not ask for the sale of the property, but asked for such relief as would be proper under all the circumstances. Defendant asked for such relief as was just and equitable in the premises. We find no reversible error in what the court did in answering the prayers of the parties.

Appellees call our attention to alleged typographical errors in amounts contained in certain findings made by the referee and ask this court to make the necessary corrections. In the light of the fact that some of the changes requested do not figure out exactly as indicated by appellees, and are generally challenged by appellant, we prefer to direct the trial court to make corrections of such typographical errors. It is so ordered.

The judgment is affirmed with directions as indicated. .