No. 31,462

Lorraine Elizabeth Wooster, *Appellant,* v. The National Bank of America, of Salina, Executor of the Last Will of W. W. Watson, Deceased, *Appellee.*

(32 P. 2d 235.)

Opinion filed May 5, 1934.

*James E. Smith, Earl H. Hatcher, Frank H. McFarland, Clayton M. Davis,* all of Topeka, and *Alexander H. Miller,* of Salina, for the appellant.

*Z. C..Millikin,* of Salina, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action on what plaintiff alleged was a note payable on demand. Judgment was for defendant. Plaintiff appeals.

The plaintiff alleged that the money for which suit was brought was loaned to W. W. Watson during his lifetime on the following dates and in the following amounts:

"January 27, 1925.............................................. $2,500
January 31, 1925.............................................. 2,500
May 16, 1925.................................................. 4,500
May 16, 1925.................................................. 500
October 20, 1925.............................................. 2,560
October 20, 1925.............................................. 2,940
November 14, 1925............................................. 500
November 21, 1925............................................. 500"

Mr. Watson died on December 4, 1931. On August 9, 1932, plaintiff filed her claim against the estate. The probate court heard and rejected her claim. On the appeal to the district court counsel for plaintiff stated—

"I will state for the benefit of the court that the only basis for the plaintiff's claim is a loan on demand."

That is the theory upon which the case was tried in the district court and upon which it was argued. The petition alleged and plaintiff attempted to prove that the money was furnished Watson with the "understanding and agreement that when plaintiff needed the money in her business it would be returned to her, together with interest thereon on the request of plaintiff and until such request was so made for the return thereof said W. W. Watson was to retain the same."

The answer of the executor of the estate of Mr. Watson consisted of (*a*) a general denial, (*b*) a statement the claims were barred by the statute of limitations, (*c*) a denial that any loans to Watson of the sums of money had been made and that plaintiff and Watson had an accounting and settlement.

The last amount claimed was alleged to have been loaned on November 21, 1925. We have seen the claim was not made until August 9, 1932. An obligation for the payment of money on demand

is due at once and the statute starts to run then. (See *Douglas v. Sargent & Bro.*, 32 Kan. 413; also, *Bank v. Lightner*, 74 Kan. 763.) This rule was recognized in the trial of this case. The plaintiff sought to avoid its effect, however, by pleading and attempting to prove that Mr. Watson was to have the use of the money in question for a "considerable and indefinite time"—thus bringing the case under the rule announced in *Longhofer v. Herbel*, 83 Kan. 278, 111 Pac. 483. There the court said:

"Where, however, the understanding of the parties is that one of them is to use the funds of the other for some considerable and indefinite period, and until repayment is requested, the continual retention of the money is permissive and rightful until demand is made, and no right of action accrues until that time." (p. 279.)

It was this burden of proof which plaintiff undertook to sustain.

Trial was before a jury. The jury answered special questions generally in favor of the theory of defendant and returned a general verdict in his favor. Judgment was rendered accordingly. At the time of the transactions Mr. Watson was president of the Watson Wholesale Grocery Company. Plaintiff was in the book-publishing business and occasionally had more money on hand than was necessary. She had known Mr. Watson a long time, and he had advised her on her financial matters. The evidence disclosed transactions which Mr. Watson had managed for plaintiff, some of them with reference to the sale of White Eagle Oil stock and some of them with reference to stock in the Watson Wholesale Grocery Company. The question of whether the transactions with reference to the grocery stock were sales or pledges of stock as collateral for loans is the turning point in this case. The testimony of plaintiff consisted in the main of the identification of checks which she had given Mr. Watson and his indorsement thereon. On cross-examination she was asked to identify certain letters written by her to Mr. Watson. Among them was defendant's Exhibit 1. It was introduced and read as follows:

"Wooster to Watson:                                    May 16, 1925.

"In this I am sending you $4,500 check on the Chicago bank and $500 on the Planters State Bank, at Salina, making the five thousand which I said I would send you for the stock. Sorry not to get it off sooner, but I waited to get the bank balance to know more definitely just what I had in each not being used or needed at this time and then check accordingly. I have as a rule several thousand not being used which I can use when I think best to buy paper or other material for the stock from time to time. This I will not

need for stock and prefer to have it invested and am glad to have the stock you mentioned.

"I have a thousand-dollar check here certified for bid use if needed at any time and also have four thousand out on demand notes which I could get at any time if needed, and likely have a thousand or more on deposit in Chicago and about two hundred in the Salina bank and some here in the State Savings Bank, so if for any reason you should have other stock for sale that you might wish to keep among your friends or later take it yourself I could send you another five thousand in a few days if you let me know? I am sure you understand I prefer my money invested with yours in Salina, also I am sure you know that what I have is at all times subject to your use if for any reason it could serve you. What I have loaned here through the State Savings Bank could be converted into cash any day, and I have seven thousand here in that shape. I trust you will frankly let me know if I can be of any help at any time?

"The money I have here I have taken out of the business in Chicago and I do not need to put it back again and do not intend to do so. I believe I told you I was not going to take any chances again on large book contracts as the paper market was too uncertain and has been ever since the war."

On redirect examination counsel sought to interrogate plaintiff as to conversations she had had with Mr. Watson during his lifetime. It was the claim of plaintiff that by testifying with reference to conversations had with Mr. Watson she could explain these letters. Defendant objected to this testimony on the ground that it would be testifying to a transaction with a person since deceased and incompetent under the provisions of R. S. 60-2804. That section, in part, is as follows:

"No person shall be allowed to testify in his own behalf in respect to any transaction or communication had personally by said party with a deceased person . . . when the adverse party is the executor, administrator, heir at law . . . of such deceased person."

The objection was sustained. Plaintiff urges that this ruling was reversible error. The force of the statute is recognized by plaintiff, but she argues that when defendant inquired of plaintiff about the letters he waived the statute and cannot now take advantage of it. She relies on the rule as announced in *Plowman v. Nicholson*, 81 Kan. 210, 105 Pac. 692. There the court said:

"The issue being whether a deed from a parent to a child was made as an advancement, a statement made by the grantee as a witness that no consideration was paid for it is testimony relating to the transaction between him and the grantor, and, if brought out by the questions of his opponent in the litigation, qualifies him to narrate all the attendant circumstances, notwithstanding he would otherwise be rendered incompetent to do so by the

statute regarding evidence concerning personal transactions with persons since deceased."

The question then is whether when defendant asked plaintiff to identify the letter it was calling for testimony from her about a transaction she had with Mr. Watson such as is forbidden by the statute.

The rule is that the statute does not forbid testimony as to all communications, but only as to those which are personal.

In *M'Kean v. Massey*, 9 Kan. 600, this court said:

"The law has not restricted the party from testifying as to communications or transactions between the parties, except where such communications and transactions were personal." (p. 603.)

The matter of what features characterize a transaction as a personal one has been considered by this court. In the case of *Bryan v. Palmer*, 83 Kan. 298, 111 Pac. 443, a party had been permitted to testify that he had mailed some money to the man whose administrator had brought suit to collect a note. The court held this was not error. The theory of the statute is that one party should not be permitted to testify to a transaction had with a person since deceased because the dead person is not here to testify as to his side. In the above case the court pointed out that even had the deceased been alive at the time of the trial he could not have contradicted the testimony as to the mailing of the money in the letter because he would have known nothing about it. The reasoning of that opinion is apropos here. Even had Mr. Watson been alive at the time of the trial he could not have contradicted what was in the letters introduced. They were admissions of the plaintiff against interest and any action taken by Mr. Watson adds nothing to their probative value. For the purpose for which they were introduced any action of Mr. Watson, taken in connection with them, is of no consequence. (See *Dillon v. Gray*, 87 Kan. 129; also *Moore v. Miller*, 119 Kan. 666.) In the case under consideration plaintiff asks to be permitted to testify concerning transactions which she had with the deceased. This testimony would have consisted of conversations had with deceased which plaintiff claims constituted an oral contract. Such transactions come within the ban of R. S. 60-2804. (See *Johnson v. Guyer*, 113 Kan. 308, 214 Pac. 779, and cases cited.) It was not error for the trial court to hold that this

statute was not waived by defendant when plaintiff was cross-examined about letters she wrote the deceased.

During the trial of the case the evidence disclosed that stock in the Watson Wholesale Grocery Company had been issued to plaintiff. This stock was evidenced by five different certificates. These certificates were introduced in evidence as a part of the defendant's case. There was also evidence that these certificates had been received by plaintiff; that dividends had been paid to her and that she had signed proxies to the company for this stock; that the last signature on the dividend check was that of W. W. Watson; and that it was not the custom of the company to pay dividends on its stock out of the personal funds of Mr. Watson.

Plaintiff then offered in evidence the stock transfer book of the company. The objection to the offer was sustained on the ground that it did not tend to prove or disprove any issue in the case. Plaintiff urges that this was error.

It will be remembered that the issue in the case was whether the money furnished Mr. Watson by plaintiff was a loan for which she took stock for security, or was for an outright purchase of stock which was transferred to her on the books of the company. The books would have shown that the stock transferred to plaintiff was the personal stock of Mr. Watson and not company stock. Plaintiff argues that had these books been shown the jury she could have argued that this was a circumstance, at least, which tended to prove that the stock transferred to plaintiff was transferred by Mr. Watson to her as security for a loan. We do not think that necessarily follows. There is just as much likelihood that Mr. Watson would sell his own stock as that he would sell the stock of the company. The test of whether such evidence should be received is whether it would aid the jury in arriving at a verdict. We have concluded that this particular evidence would have been of no value. It was properly excluded.

Plaintiff next urges that the instructions given were erroneous. The ground urged is that the court placed too much emphasis upon the theory and contentions of defendant and did not give an instruction to the jury as to the theory upon which it could find for plaintiff.

As to the latter contention an instruction given by the court in the first part of the instruction is as follows:

"If you find and believe from the evidence by a preponderance thereof that the plaintiff loaned to W. W. Watson the sums of money or any of them at 7 per cent interest per annum, that said loans were made on demand and for an indefinite time and until plaintiff needed the money so loaned, then your verdict should be for plaintiff and the amount of her recovery would be the sums of money so loaned by her to Watson, unless you find that such sums were repaid to her by said Watson."

This was a plain, clear and concise statement of the plaintiff's theory of the case and the necessary elements for her recovery.

It is true that the succeeding paragraphs point out various conditions under which plaintiff could not recover. It appears, however, that these instructions were necessary, partly because the suit was based upon several different items of money furnished on different dates and under different circumstances, and also the defendant was entitled to instructions as to the defense based on the statute of limitations; the claim that a full statement had been made; and that the money furnished had been furnished Mr. Watson by plaintiff to invest for her and not as a loan.

We have many times held that all the instructions given by a trial court should be construed together as a whole. So construed, we see no error in the instructions in this case.

The judgment of the trial court is affirmed.

BURCH, J., not sitting.