No. 33,715

VERA CASSITY and FRANCES CASSITY, *Appellees*, v. A. B. CASSITY, B. R. CASSITY, BEN A. CASSITY, HELEN CASSITY MCDONALD, *Appellants* (ROBERT OTIS CASSITY, *Defendant*).

(76 P. 2d 862)

Opinion filed March 5, 1938.

*DeWitt M. Stiles* and *Guy M. Lamer*, both of Iola, for the appellants.
*Rice Lardner* and *Bert L. Woods*, both of Garnett, for the appellees.

The opinion of the court was delivered by

WEDELL, J.: This was a partition suit. Defendants appeal from an order sustaining a demurrer to a certain paragraph of their answer.

The two plaintiffs claim title through a quitclaim deed and contend they are together the owners of an equal undivided one-sixth remainder interest. Defendants represent the remaining five-sixths interest in the land, and urge the interest of plaintiffs is subject to an equitable lien created by an oral agreement.

The answer admitted the following facts contained in plaintiffs' first cause of action, to wit: J. R. Cassity died testate in 1915 and his will was duly probated. Under that will his widow, S. J. Cassity, received a life estate, and she elected to take under the will. The

remainder vested in six sons, share and share alike. Four of the defendants are his sons, and the fifth defendant, Helen Cassity McDonald, obtained the interest of a son, Henry Cassity, who died testate on April 26, 1930. The sixth son, Herman Cassity, died testate on February 19, 1930, and devised all his property to his wife, Anne Cassity. On June 7, 1930, Anne Cassity conveyed her one-sixth interest in the land to the two plaintiffs by quitclaim deed which was recorded on the date of its execution. The widow and life tenant under the will of J. R. Cassity died on April 9, 1936.

The second cause of action incorporated, by reference, the averments contained in the first cause of action, and further alleged:

"Plaintiffs further state and allege that they are entitled as such tenants in common with the defendants herein to the possession of said real estate; but the defendants have denied plaintiffs' rights to possession thereof, and the defendants have at all times held possession of said property, and collected the rents and profits therefrom, and refused to account to plaintiffs or recognize their rights in any way."

Plaintiffs prayed for judgment quieting their title to an equal undivided one-sixth interest in the land, and for an accounting of the rents and profits.

In addition to the admissions above mentioned, the answer, in substance, alleged the title of plaintiffs was subject to a lien, and then proceeded to relate the oral agreement upon which the purported lien was based, as follows:

"Further answering the petition of plaintiffs, these answering defendants especially deny that plaintiffs are entitled to a judgment directing partition of the real estate described in the petition or any other relief prayed for therein by reason of the following facts, in addition to the facts alleged in the petition and admitted by this answer, which admitted facts are hereby incorporated herein by reference to save repetition, to wit: A short time after the death of J. R. Cassity, the exact time and place of which these answering defendants cannot state with any more definiteness, the answering defendants, A. B. Cassity, B. R. Cassity and Ben A. Cassity, and the defendant Robert Otis Cassity, and Henry B. Cassity and Herman Cassity above mentioned, who were then the owners of all the real estate described in the petition under the terms of the will of J. R. Cassity, deceased, subject only to the life estate of the above-mentioned S. J. Cassity, therein entered into an oral agreement with and between one another and with the said S. J. Cassity, that because of the inexperience of the said S. J. Cassity and her inability successfully to manage and control the said real estate, and for the purpose of providing for careful management of said real estate so that the same might produce the best possible income for said life tenant during her lifetime and that same might be preserved without waste or depreciation

in value for the owners of the remainder interests therein, all of said real estate should be kept intact and should be managed and controlled by the defendant A. B. Cassity as agent for all the said owners thereof, and that as such agent the said A. B. Cassity should manage, control, rent and look after all of said real estate, except the part thereof which the said S. J. Cassity should occupy, collect the rents and income from the same, pay the taxes on all of said real estate, keep the buildings thereon insured, make needed repairs and improvements thereon and pay over to the said S. J. Cassity annually during her lifetime the net proceeds therefrom; and that the said A. B. Cassity as such agent, he having been appointed and qualified as executor of the estate of J. R. Cassity, deceased, should make and file in the probate court of Anderson county, Kansas, together with and as a part of his annual account as such executor, a full account each year of all his receipts and expenditures connected with his handling of said real estate. At the same time, and as part of the same agreement, it was further orally agreed between said parties that at the time of the death of the said S. J. Cassity, if she left no property of her own out of which to pay the same, all her debts, expenses of last sickness and burial should be paid out of the proceeds of said real estate; that none of said real estate nor the interest of any of the said owners therein should be by them sold or conveyed to others or otherwise voluntarily alienated during the lifetime of said S. J. Cassity nor for such reasonable time thereafter as might be necessary to make an advantageous sale of the same and that said real estate should not be divided nor partitioned among said joint owners thereof during the lifetime of the said S. J. Cassity nor for such reasonable time thereafter as might be necessary to make an advantageous sale thereof; and that upon the death of the said S. J. Cassity, the said A. B. Cassity should continue to manage and control all of said real estate until such time as same could be sold to advantage; and that upon the sale of said real estate all unpaid expenses of administration upon the estate of J. R. Cassity, deceased, and all debts of the said S. J. Cassity, expenses of her last sickness and burial should be paid out of the proceeds of the sale of said real estate and the balance of the proceeds from the sale thereof be divided equally among said owners thereof according to their respective interests therein.

"These answering defendants say that in accordance with said oral agreement said real estate has been kept intact since the death of said J. R. Cassity, the said A. B. Cassity as agent for all the owners thereof has managed and controlled the same, collected the rents and income therefrom, paid the taxes thereon, kept the buildings thereon insured, made necessary repairs and improvements thereon, preserved the same from waste and depreciation in value, annually filed his account of receipts from and expenditures on the same in the probate court of Anderson county, Kansas, together with his account as executor of the estate of J. R. Cassity, deceased; has annually paid to S. J. Cassity, during her lifetime, the net proceeds therefrom, and has generally and substantially carried out the terms of said agreement; and since the death of the said S. J. Cassity has made diligent effort to make sale of said real estate at a fair and reasonable price in order that said agreement might be completed and fulfilled according to the terms thereof;

but these answering defendants say that a reasonable time has not elapsed since the death of S. J. Cassity on April 20, 1936, in which to make an advantageous sale of said real estate in accordance with said agreement, and that to allow, adjudge and decree partition of said real estate at this time would be in contravention of the terms of said agreement and would subject these answering defendants and the other defendants to unnecessary additional costs, charges and expenses."

A demurrer had been sustained to paragraph five of the original answer, and defendants filed an amendment in lieu thereof, which reads:

"Further answering the petition of plaintiffs, these answering defendants say that about the year 1919 Herman Cassity, above mentioned, who was then one of the owners of said real estate, under the terms of the will of J. R. Cassity, deceased, as heretofore alleged and admitted, desired to use a portion of the real estate belonging to said estate for farming purposes, and it was then orally agreed by and between said Herman Cassity and the defendant A. B. Cassity as agent for all the other owners of said real estate under the agreement above set forth, that said Herman Cassity might use a portion of said land and that he should thereupon become obligated and indebted to the other owners of said land for the reasonable value of the use thereof. That under said agreement said Herman Cassity did occupy and use a portion of said land during the years 1919, 1920, 1921 and 1922 and thereby became obligated and indebted to the other owners of said land in the sum of $987. That on or about the 12th day of September, 1922, for the purpose of settling and determining the amount of said indebtedness and of providing for the payment of the same and of providing for security of the same, it was further orally understood and agreed by and between the said Herman Cassity and all the other owners of said land by and through their agent A. B. Cassity that said amount of $987 should be considered as a loan and advancement to said Herman Cassity, and should become and be a charge and lien upon his said interest in said land. That said amount should draw interest at the rate of six percent per annum; that the said Herman Cassity might pay the same and accrued interest thereon at any time but that the same should not become due so that payment thereof could be demanded until said real estate was finally sold after the death of S. J. Cassity in accordance with the agreement between all the owners of said real estate as hereinbefore set forth; and that upon sale of said real estate after the death of S. J. Cassity, the amount then due for principal and interest should be charged against and deducted from the share of Herman Cassity in the proceeds of said sale and should then be distributed and paid to the other owners of said land according to their respective interests therein. That at the time of said last-mentioned agreement, to wit: September 12, 1922, as a memorandum of the amount due under said agreement, said Herman Cassity executed and delivered to the said A. B. Cassity, as agent of all the other owners of said real estate, a written instrument in the general form of a promissory note without any maturity date, reciting in substance that the said Herman Cassity promised to pay to the order of J. R. Cassity estate the said sum of $987 and interest. A true copy of said mem-

orandum is attached to the original answer filed herein, is marked exhibit 1, and is made a part hereof by reference. No part of the principal amount of said indebtedness or any of the interest thereon has ever been paid, and the amount due thereunder at the date of filing the answer herein is the sum of $1,833.76. The above-mentioned Anne Cassity, widow and sole devisee of the said Herman Cassity, under his will as set forth in plaintiffs' petition, knew at the time of the making of said agreement all the facts and circumstances concerning the same as herein set forth and that the amount of said indebtedness and the interest thereon was a charge or lien upon the interest of said Herman Cassity in said real estate payable out of his share of the proceeds of the sale of said land whenever the same was sold. Whatever interest said Anne Cassity acquired in said real estate under the will of said Herman Cassity was subject to the payment of said indebtedness and interest. The plaintiffs, having acquired their interest in said land by quitclaim deed from the said Anne Cassity, have no greater interest in said land than the said Anne Cassity had and no greater interest therein than the said Herman Cassity had at the time of his death, and whatever interest said plaintiffs have in said real estate is subject to a charge or lien for the payment of said indebtedness and interest in said sum of $1,833.76."

Exhibit 1, being the note referred to, reads:

"GARNETT, KANSAS, Sept. 12, 1922.

"............................................ after date, for value received, I, we, or either of us, promise to pay to the order of the J. R. Cassity estate nine hundred and eighty-seven dollars, at the Citizens State Bank, Garnett, Kansas, with interest at the rate of 6 percent per annum, from date until maturity. Interest after maturity at the rate of 10 percent per annum.

"The makers, endorsers and guarantors of this note hereby waive all and any notice of any extensions, demands or protests. H. CASSITY."

The trial court sustained plaintiffs' general demurrer to paragraph five of the answer as amended, and that ruling is here for review. The record is silent as to the ground or grounds upon which the demurrer was sustained. Plaintiffs urge various theories in support of the ruling, including the statute of frauds. The case was submitted without oral argument, and the subject of the statute of frauds is not treated in defendants' brief. Plaintiffs direct our attention to the provisions of G. S. 1935, 33-106, relating to oral agreements which are not to be performed within the space of one year. Careful analysis of the answer discloses not only one but several oral agreements between the years 1915 and 1922. The last agreement in 1922 pertains to the purported lien on the real estate in question. While these combined agreements as pleaded appear to have been operative over the period of the entire life tenancy from 1915 to 1936, and are not yet concluded, for the reason that the land has not been sold, yet in view of the particular aver-

ments contained in the answer it is doubtful whether we could properly conclude that the agreements could not have been wholly matured within one year. Unless an oral agreement discloses it cannot be performed within the space of one year, we cannot say the agreement violates the provisions of the statute. (*Stahl v. Stevenson,* 102 Kan. 447, 451, 171 Pac. 1164; *Henshaw v. Smith,* 102 Kan. 599, 602, 171 Pac. 616; *Dubbs v. Haworth,* 102 Kan. 603, 171 Pac. 624.) We need, however, not rule the case on that particular issue.

The answer clearly discloses it was attempted by oral agreement to create a lien on a particular interest in land. Only the amount of the debt was reduced to writing, and it was evidenced by a note executed in 1922. The maker died testate in 1930, which was eight years after he executed the note. No claim on the note was presented against his estate. His wife conveyed the title to her daughters, the plaintiffs, in 1930. The deed was not concealed, but was promptly recorded. Fraud in the conveyance is not charged. No action was instituted to set aside the conveyance or to assert a lien on the interest conveyed. The note was a demand note. The answer in substance alleges that at the time the note was executed it was orally agreed the amount thereof, together with interest, should constitute a charge or lien on the interest of the remainderman. The note contains no such provision. We thus have an alleged agreement partly in writing and partly in parol, made simultaneously, but without the slightest reference, in the written portion thereof, to a charge or lien on real estate. The note was not made payable to defendants, but to the "J. R. Cassity estate." S. J. Cassity was the widow of J. R. Cassity and was the life tenant. If we assume the note was intended for the benefit of the life tenant or to ultimately inure to the benefit of the other five remaindermen, it still remained only a naked note and without the slightest indication it was intended to create a lien. In 27 C. J., Frauds, Statute of, § 197, the rule is stated thus:

"An oral agreement purporting to create, or providing for the creation in future, of a lien on real property is unenforceable; a lien on land can be created only by a writing complying with the statute of frauds or by operation or implication of law."

In *Reid v. Kenworthy,* 25 Kan. 701, it was held:

"While the form of the memorandum is not material, it must state the contract with reasonable certainty, so that the substance can be made to

appear and be understood from the writing itself, or by direct reference to some extrinsic instrument or writing, without having recourse to parol proof." (Syl. ¶ 2.)

See, also, *Wing v. Mollett*, 115 Kan. 116, 222 Pac. 88, and the numerous cases therein cited. In the Wing case this court quoted with approval from 27 C. J. 267, 268:

" 'To be sufficient as a note or a memorandum under the statute of frauds, a writing must be complete in itself, leaving nothing to rest in parol. The entire agreement must be expressed in the writing. The contract cannot rest partly in writing and partly in parol. The general rule that a contract which is not entirely in writing is to be treated as a parol or verbal contract is applicable in determining whether the contract is within the inhibition of the statute of frauds. The memorandum must contain all the essential elements or material parts of the contract.' " (p. 118.)

In the instant case the writing was not only entirely silent on the general subject of a charge or lien on land, but it made no attempt to designate the particular property owned by the deceased remainderman on which such indebtedness should constitute a lien. It is unnecessary to discuss the further complication arising by reason of the fact the note was not made payable to the defendant remainderman now asserting the lien. Nor is it necessary to discuss the question of consideration for the note, as between the defendants and the maker of the note. The only memorandum of the agreement was in the form of a note and it was clearly insufficient to create a lien.

Plaintiffs further urge the demurrer was properly sustained for the reason the claim of defendants was barred by the five-year statute of limitations. (G. S. 1935, 60-306.) The note was dated September 12, 1922. The note was made payable, "——— after date." No intention was evidenced by the note except that it was payable "after date." It was a demand note. (8 C. J., Bills and Notes, §§ 599, 600; *Douglass v. Sargent & Bro.*, 32 Kan. 413, 4 Pac. 861; *Wooster v. National Bank of America*, 139 Kan. 429, 430, 32 P. 2d 235.) Demand for payment was expressly waived. The general rule is that the obligation to pay was due at once and that the statute of limitations began to run on the note from the date of its execution. (8 C. J., Bills and Notes, § 602; 37 C. J., Limitation of Actions, § 200; *Douglass v. Sargent & Bro.*, supra; *Bank v. Lightner*, 74 Kan. 736, 739, 88 Pac. 59; *Wooster v. National Bank of America*, supra.) The facts pleaded in defendants' answer, relative to the oral agreement, varied and contradicted the legal tenor of the note.

the only portion of the agreement which was in writing. Moreover, the note in the instant case was barred under any doctrine of reasonable time for payment. A reasonable time for payment obviously could not extend beyond the statutory period of limitation, which is five years. The rights of the defendant remaindermen on the note, if they had any, were not asserted until over fourteen years after the execution of the note. Clearly the claim was barred.

Defendants urge the district court had full power to make any order which might be necessary to make a just and equitable partition between the parties and to secure their respective interests. (G. S. 1935, 60-2114; 7 R. C. L., Cotenancy, § 32; *Thresher Co. v. Judd,* 104 Kan. 757, 176 Pac. 110.)

That a court of equity is vested with authority to adjust existing interests and equitable rights between the parties to an agreement is, of course, conceded. Such authority, however, does not confer power to create equities based on claims long since barred.

Defendants further urge that since plaintiffs took under a quitclaim deed they were not bona fide purchasers and took subject to all equitable claims against the interest acquired which could have been discovered in the exercise of reasonable diligence. (*Johnson v. Williams,* 37 Kan. 179, 14 Pac. 537; *Knight v. Dalton,* 72 Kan. 131, 83 Pac. 124.) The Johnson case dealt with adverse and outstanding equities and interests which were discoverable from records in the office of the register of deeds. The principal issues in the Knight case were whether a grantee in a quitclaim deed obtained a contingent interest subsequently acquired by the grantor and whether the deed was intended only as security for a debt which in fact had been paid.

In the instant case, search of the records or other inquiry by plaintiffs would have disclosed no enforceable equities or claims against the land. The note was executed about eight years before plaintiffs obtained their deed. No claim the note constituted a lien on any real estate owned by the deceased grantor was ever recorded. The note, if discovered by plaintiffs, would have disclosed no semblance of a lien. The terms of the oral contract remained latent, hidden and concealed insofar as plaintiffs were concerned. In the Johnson case, *supra,* cited by defendants, it was said:

"It may be that with reference to some equities or interests in real estate, the purchaser who holds only under a quitclaim deed may be deemed to be a bona fide purchaser; for equities and interests in real estate may sometimes be latent, hidden, secret and concealed, and not only unknown to the pur-

chaser, but undiscoverable by the exercise of any ordinary or reasonable degree of diligence. It is possible also that a purchaser taking a quitclaim deed may under the registry laws be considered a bona fide purchaser with reference to a prior unrecorded deed with respect to which he has no notice nor ' any reasonable means of obtaining notice." (p. 181.)

Inquiry by plaintiffs at the time they received the deed in 1930 would have disclosed that the obligation now asserted as a lien had been barred about three years before the delivery of their deed.

In view of what has been said it will be unnecessary to discuss other grounds urged by plaintiffs in support of the order sustaining the demurrer. The ruling must be affirmed. It is so ordered.