No. 34,420

R. M. BUNDY, Receiver of the Security Loan and Investment Company, *Appellee*, v. THE LIBERTY LIFE INSURANCE COMPANY, *Appellant*.

(95 P. 2d 550)

Opinion filed November 10, 1939.

*Otis S. Allen* and *George S. Allen,* both of Topeka, for the appellant.

*Fred M. Harris* and *Basil W. Kelsey,* both of Ottawa, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action to recover money. Judgment was for plaintiff. Defendant appeals.

The petition alleged that about May 20, 1932, the defendant entered into a written contract with J. D. Adam, wherein it was agreed that Adam would act as general agent for defendant in Ottawa, Kan.; that the contract provided for the payment of Adam on a commission basis; that payment of renewal commissions was to be also upon the term of service with the company; that for the term of service of two full years the general agent should be entitled to renewals, if earned, to the sixth year of insurance, and for the term of three full years' service the general agent should be entitled to renewals, if earned, to the tenth year of insurance; that renewal commissions should not be paid after termination of the contract in event the general agent should not have completed two full years' service. The petition further alleged that upon the date of the above agreement Adam was and had been employed by the plaintiff as manager; that the contract mentioned was made with Adam because defendant stated that it would not make general contracts with corporations, and in fact it was made for the benefit of the plaintiff by Adam as its employee, and the plaintiff, through the efforts and time of its employees and the general facilities of the plaintiff, produced such insurance business as was produced under the contract; that plaintiff is entitled to all the interest of Adam in any commissions due under the contract. The petition further alleged that about March 1, 1934, J. D. Adam discontinued his employment by plaintiff; that plaintiff desired to continue its general agency for defendant, and to that end defendant made an oral contract with plaintiff that if Garland Elliott, the succeeding manager of the plaintiff, would enter into a general agency contract with de-

fendant as the employee of plaintiff, then defendant would pay plaintiff such renewal commissions as would have accrued under the general agency contract of Adam, based upon the time computed from the date of the Adam contract to the end of service by Elliott; that in consideration of this agreement the plaintiff caused Elliott to enter into a general agent's contract with defendant on or about March 6, 1934; that Elliott remained in the employ of plaintiff until August 1, 1935, and procured new life insurance business and serviced existing contracts in furtherance of the oral contract until August 1, 1935—all through the efforts and facilities and expense of plaintiff. The petition further alleged that the defendant kept accounts of renewal commissions accruing to the plaintiff here under the oral agreement, evidencing the same by monthly statements of ledger account, mailed to the plaintiff each month; that the last ledger account, dated September 28, 1937, showed a balance credited and owed to the plaintiff by defendant in the amount of $1,339.88. The petition further alleged that defendant represented orally and by letters to plaintiff that the renewal commissions accruing in accordance with the oral agreement were being credited to the plaintiff, but could not be paid until a release was obtained from Adam, but that defendant refused to pay the amount due even though demand had been made. The petition then alleged that plaintiff believed defendant was entitled to some credits upon its account stated as of September 28, 1937, in the amount of $1,339.88, by reason of payment of agent's commissions; that the amount of these payments was unknown to plaintiff, and that since September 29, 1937, under the oral agreement additional renewal premiums had accrued to plaintiff.

The prayer was that plaintiff recover from defendant $1,399.88 with interest from September 28, 1937, less any proper deductions, and for an accounting.

The answer of defendant was a denial that it had any dealings with plaintiff or entered into any oral contract with it, or that plaintiff had any interest in the Elliott contract, or that it ever represented to the plaintiff that renewal commissions on the alleged contract were being credited to plaintiff.

The reply was a general denial.

The case was submitted to the jury on the issue of whether the plaintiff or defendant should prevail. The jury found for the plaintiff. The defendant filed a motion for judgment, notwithstanding

the general verdict, because the undisputed evidence showed that the alleged contract was in violation of the law; that plaintiff had no authority to make the contract; that it was in violation of the statute of frauds. This motion and a motion for new trial were overruled. Pursuant to a subsequent hearing the trial court ordered that the plaintiff should recover from defendant in accordance with the prayer of the petition, and that the defendant should account to plaintiff for all insurance contracts written by it under authority of the general agency contract during the period from May 20, 1932, to March 5, 1934, and that the renewal commissions accruing thereon be paid to the plaintiff upon the schedule of rates appearing in the general agent's contract; that the plaintiff was entitled to receive from the defendant, The Liberty Life Insurance Company, a corporation, the renewal premium commissions for a period of ten years from the date of each individual policy issued. The parties agreed as to the amount due, pursuant to the above method of accounting, and judgment was entered accordingly.

At the conclusion of the evidence of plaintiff defendant demurred to it. This demurrer was overruled. The overruling of this demurrer and the overruling of its motion for judgment are the first errors of which defendant complains.

The first argument of defendant is that the evidence did not prove an oral contract, as alleged. There was evidence in the record that Adam, while the general-agency contract was in his name, had received $50 a month from defendant and had paid that amount to plaintiff each month; that he had been general manager of plaintiff and that he severed his connections with plaintiff on March 5, 1934. This was not quite two years after he made the general-agency contract on May 20, 1932. The evidence was that Elliott came to the offices of the defendant, advised the company of the fact that Adam was leaving the employ of plaintiff, and that plaintiff desired to continue as the general agent of the defendant. There was the following testimony as to what took place at this conference:

"Q. Was there any conversation as to whom these renewal premium commissions would be paid? A. To the Security Loan and Investment Company.

"Q. Did they say why it was they desired to pay it to the Security Loan and Investment Company? A. The Security Loan and Investment Company had promoted a general agency and provided funds in order to carry on the agency and commissions under the Adam contract.

"Q. What was to be the basis of payment to the security company for determining what was owing? A. It would be on the same basis as outlined in the contract. The same percentage as provided in the Adam contract.

"Q. Now, with regard to the length of service, and two-year provision in there, what was the substance of what these men talked about? A. That the service date began with the date of Adam's contract, which was May 20, 1932, and terminated at the time there of my service, under my general-agency contract.

"Q. Now, all of these agreements upon the part of the Liberty Life Insurance Company were made in consideration of what act or acts that the Security Loan and Investment Company would have to do? A. That I, as manager of the Security Loan and Investment Company, would enter into an agreement with the Liberty Life Insurance Company to carry on the agency the same as it had been done when Mr. Adam was there.

"Q. For whose benefit was that written agent's contract that you made with them? A. For the Security Loan and Investment Company. A written general-agency contract was entered into at that time."

Again this witness testified:

"I told them that Mr. Adam had been discharged from the Security Loan and Investment Company, and that the company wished to continue with the life insurance business, and since Mr. Adam was then leaving, they had designated me to act in their behalf and gave me a letter of authority to present to the Liberty Life Insurance Company and try to work out some plan so we could go ahead with the agency.

"Q. Was that about the sum and substance of the conversation? A. The matter of renewal commissions was discussed under Adam's contract. They assured me that these would be paid to us.

"Q. By 'us,' who do you mean? A. I mean the Security Loan and Investment Company.

"Q. What commissions are referred to, do you know? A. Commissions under Adam's general-agency contract.

"Q. Was it renewal commissions to the soliciting agent? A. Under the whole contract, was my understanding.

"Q. That was the sum and substance of the conversation? A. That was the substance of it. Yes."

There was other evidence as to the fact that this contract was entered into. The above is, however, ample to warrant the jury in finding that such a contract was made and is good as against a demurrer to the evidence or a motion for a directed verdict. There is no question raised here but what the contract of Adam with defendant entitled him to renewal commissions if he had the agency two years, and that he would not be entitled to any renewal commissions if he did not keep it two years.

Defendant argues that the words "as would have accrued under the general-agency agreement of J. D. Adam" mean nothing, because no renewal commissions had accrued to Adam. It is clear that all the parties understood that the words meant such commissions as would have accrued to Adam had he kept on working under

the contract for two years. This seems to us as clear a statement of what was meant as could be made.

The next argument of defendant is that the oral contract could not be performed within the space of one year and therefore is void because contrary to the statute of frauds. The oral contract provided briefly that if Elliott, as the employee of the appellee, would enter into a general agent's written contract similar to that in the name of J. D. Adam, and carry on as such the general agency, the same as had been done under the managership of Adam, then the appellant would pay appellee renewal premium commissions upon insurance written under the so-called Adam contract. Also, that the required term of service would be calculated by the space of time from May 20, 1932, the date of the Adam contract, to the end of service by Garland Elliott as the employee of appellee and under the contract in his name dated March 6, 1934. At the time Elliott entered into this contract only about two months of the two-year period remained to be performed. By May 20, 1934, plaintiff became entitled to the renewal commissions under this oral contract. Where a contract can be performed within a year it is not void under the statute of frauds. (See *Larimer v. Kelley*, 10 Kan. 299.) In *Sutphen v. Sutphen*, 30 Kan. 510, 2 Pac. 100, this court said:

"We remark again that a contract will not be adjudged void by reason of the last prohibition in section 6 of the statute of frauds and perjuries unless it affirmatively appears that, fairly and reasonably interpreted, it does not admit of performance within the year. The fact that very likely performance will require more than a year, or that performance is not completed within the year, does not invalidate it. Unless the court, looking at the contract in view of the surroundings, can say that in no reasonable probability can such agreement be performed within the year, it is its duty to uphold the contract. The presumptions are all in favor of validity." (p. 512.)

We hold that this oral contract could be performed within a year and hence was not void under the statute of frauds.

Defendant next argues that the oral contract was void because it was in violation of G. S. 1935, 40-239. That section defines an insurance agent as an individual authorized in writing by any insurance company lawfully qualified to transact the business of insurance, to negotiate or effect contracts of insurance on behalf of the insurance company; or secondly, any officer or agent of a corporation which is permitted by law to negotiate or effect such contracts of insurance, where said corporation holds a direct agency

appointment from the insurance company. Defendant argues that plaintiff violated this provision because it had no power to negotiate insurance. The fact is that the plaintiff did not negotiate insurance, nor did it act as an insurance agent. It only furnished the means with which others were able to do so. We see no violation of the law in this.

Defendant next argues that plaintiff had no authority to make the contract alleged to have been made and the contract is *ultra vires* and void. What has been said with reference to the argument that the oral contract was in violation of G. S. 1935, 40-239, is an answer to the above argument.

Defendant next argues that the oral contract was void because it attempted to change the terms of a written contract. This argument does not take account of the fact that the oral contract, upon which this action was brought, was collateral to the written contract. The parties here do not seek to change the terms of either the contract between Adam and the plaintiff or between Elliott and the plaintiff. The oral contract was between plaintiff and defendant, and the only purpose served by the written contract was to furnish the means of measuring the consideration to be paid plaintiff when the oral contract was carried out. The rule is announced in 12 Am. Jur. 758, as follows:

"Moreover, the parol-evidence rule does not affect a purely collateral contract distinct from, and independent of, the written agreement, though it relates to the same general subject matter and grows out of the same transaction, if it is not inconsistent with the writing."

Defendant next argues that part of the claim of plaintiff is barred by the statute of limitations. It is pointed out that the action was commenced more than four years after the contract was made. The record discloses that the action was brought upon an oral contract and a mutual, open and current account between the parties. The last credit upon the account was made September 28, 1937, in the amount of $11.16, bringing the amount owed plaintiff to $1,399.88. This was clearly an account kept in writing and in which was set down by the parties a connected series of debits and credits, and the parties intended the individual items should not be considered separately, but as a continuation of a related series. In such a situation the following rule applies:

"Where there is an open, running, mutual account between two persons, each person does not have a separate cause of action for each separate item of the

account, but only the person in whose favor there is a balance due on the account has a cause of action for such balance against the other. The statute of limitations does not run against each item separately, but only against the balance due; and it will commence to run only from the time of making the last item rightfully credited to the party against whom the balance is due. Each item thus credited to the party against whom the balance is due is a payment or part payment, not of any particular item against him, but of the balance due against him, and is, in one sense, a payment or part payment of every item rightfully charged against him in the whole account." (*Waffle v. Short,* 25 Kan. 503, syl.)

The statute did not begin to run upon any part of the account until September 28, 1937. The action was brought on July 16, 1939, and the statute had not run.

Defendant next argues that there is no evidence that plaintiff performed its part of the contract. Under the terms of the oral contract plaintiff agreed to cause Garland Elliott to enter into a general agent's contract with defendant. All parties admit this was done. The general agency was carried on at the office of plaintiff from March 6, 1934, to August, 1935, just as it had been done from May 20, 1932, to March 6, 1934. One of defendant's own witnesses stated that the old business had been serviced during the above times. There was, therefore, sufficient evidence to justify submitting to the jury the question of whether the oral contract had been performed.

The judgment of the trial court is affirmed.