No. 38,205

W. G. Talbott, *Appellee,* v. John P. Gaty, Olive Ann Beech and Theodore A. Wells, *Appellants.*

(231 P. 2d 205)

Opinion filed May 12, 1951.

*Dwight S. Wallace,* of Wichita, argued the cause and *Daniel M. Moyer* and *Daniel C. Bachmann,* both of Wichita, were with him on the briefs for the appellants.

*Howard T. Fleeson,* of Wichita, argued the cause and *Paul H. White, Homer V. Gooing, Wayne Coulson, Paul R. Kitch, Dale M. Stucky,* and *Donald R. Newkirk,* all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action for damages for an alleged breach of an oral contract of employment. The appeal is from an order overruling defendants' demurrer to plaintiff's petition.

The petition alleged that plaintiff was a petroleum engineer; that defendants had engaged as partners in the program of exploration and development for the production of oil and gas; defendant Gaty had the active management of it; that from May, 1945, until June, 1949, the plaintiff was employed by the defendants as a consulting geologist and learned that the actual drilling of defendants' wells was costing them an average of $12,000 per well, with cable tools; that prior to January, 1947, the defendant had drilled a number of wells in the Salter Pool; that about the 27th of January, 1947, plaintiff orally offered to Gaty that he would by using a rotary drilling rig drill their wells for $10,000 each; that after the conversation plaintiff made this proposition by means of a letter to Gaty, which was approved and accepted by defendants; that between January, 1947 and October, 1947, plaintiff drilled nine wells for defendants, for which he was paid at the contract rate; that about the month of May, 1948, plaintiff orally informed Gaty that the rotary drilling rig he had been using was no longer available to him and stated that he would acquire a new rotary drilling rig if in the near future he would have enough wells to drill for the defendants to justify the outlay.

The petition alleged that plaintiff and Gaty together took a plat of the Salter Pool and computed that the defendants would have approximately twenty-two wells to drill in that pool within the period of about a year and Gaty orally stated to the plaintiff that if he would purchase a new rotary drilling rig the defendants would let the plaintiff drill for them twenty wells in the Salter Pool under the terms of the letter agreement within a period of approximately one year from that time; that plaintiff purchased a new rotary drilling rig at a cost of approximately $100,000, which rig was delivered to him early in the month of August, 1948; that pursuant to

the agreements already stated the plaintiff drilled five wells in the Salter Pool for the defendants, the fifth being completed on or about th 8th of February, 1949, and at that time the defendant orally stated to the plaintiff that he would not be permitted to drill any more wells for the defendants under the terms of the agreement; that since the 8th of February, 1949, defendants had continued to drill wells in the Salter Pool, employing drilling contractors other than the plaintiff, and had refused to permit the plaintiff to drill any more wells under the terms of the agreement. The petition alleged that this action constituted a breach of the letter agreement and supplementary oral agreement and had deprived plaintiff of an average profit of $2,000 each on fifteen wells, which the plaintiff was entitled under the agreements to drill for defendants, resulting in plaintiff's damage in the amount of $30,000.

Judgment was asked in this amount.

The letter, to which reference was made, was attached to an exhibit.

To this petition the defendants filed a motion to strike and to make definite and certain. The motion to strike was directed at some inconsequential allegations. The court sustained certain parts of it. This order was complied with by plaintiff in his amended petition. The motion to strike is not necessary to be discussed in this opinion. The motion to make definite and certain was directed at some fifteen statements in the petition.

The defendants asked that plaintiff be ordered to make paragraph 5 more definite and certain by stating the exact date when defendant Gaty informed him orally that the defendants would have no more wells to be drilled until sometime in the year 1948. The court sustained this part of the motion and the plaintiff complied by stating that this was about October, 1947, and that he was unable to state the time more precisely. The defendants also asked that the plaintiff be ordered to make his petition more definite and certain by stating the approximate date when he and Gaty took the plat of the Salter Pool and computed that defendants would have approximately twenty-two wells to drill. The court sustained that part of the motion and the plaintiff complied by alleging that this took place about the middle of May, 1948, and he was unable to state the time more precisely. The defendants also asked that the plaintiff be required to state if he knew the number of wells drilled by defendants in the Salter Pool by contractors other than the plaintiff since the 8th day of February, 1949, and up to the time of the filing

of the petition and the approximate distance and direction of such wells from wells drilled by plaintiff for the defendants in that pool. That part of the motion was sustained and the plaintiff complied by stating that subsequent to January, 1949, and prior to the filing of the action, the defendants had drilled two wells in the Salter Pool and gave their approximate location. The balance of the motion to make definite and certain was overruled. We have examined this motion and have concluded that those portions of the motion were properly overruled and did not call for any information, to which the defendants were entitled.

The defendants demurred to the petition on the ground that it did not state facts sufficient to constitute a cause of action.

The first ground was that the amended petition contained no allegation of an agreement by defendants whereby they were obligated to drill any particular number of wells in the Salter Pool.

The basis of this argument is first that the letter attached to the petition was merely a price quotation accepted by Gaty. They then refer to the language of the petition and argue that in it plaintiff did not state that defendants agreed to drill twenty wells during the time stated nor that defendants agreed to purchase services on twenty wells from plaintiff.

In consideration of this argument we must first examine the letter. In it plaintiff first refers to a conversation between the parties. It then states that plaintiff as a drilling contractor would drill a hole of a prescribed size and depth and would perform other incidental services; second that at a designated time he would remove the tools and perform other services; and third that he would be paid $10,000 for each well. This letter bears the approval and acceptance of Gaty.

As to this letter and the acceptance of it by defendants, the petition would be open to the construction that pursuant to it plaintiff was to drill all defendants' wells in the Salter Pool. It was not this contract out of which his lawsuit grew, however. At that time, that is, in January, 1947, plaintiff did not apparently care how many wells defendants would have him drill since the rotary rig he was using was not his own and he had no money invested in it. At any rate, nine wells were drilled in the Salter Pool by plaintiff for defendants between January and October, 1947.

The contract out of which this action grew is alleged to have been consummated about May, 1948. The allegations of the amended petition as to this contract are as follows:

"About the month of May, 1948, the plaintiff orally informed the defendant Gaty that the rotary drilling rig which the plaintiff had been using would no longer be available to him and stated to said defendant that he would acquire a new rotary drilling rig if in the near future he would have enough wells to drill for the defendants to justify the outlay. The plaintiff and the defendant Gaty then (about the month of May, 1948, the plaintiff being unable to state the time more precisely) took a plat of the Salter Pool and together computed that the defendants would have approximately twenty-two wells to drill in that pool within the period of about a year; and the defendant Gaty orally stated to the plaintiff that if the plaintiff would purchase a new rotary drilling rig the defendants would let the plaintiff drill for them twenty wells in the Salter Pool, under the terms of the letter agreement aforesaid, within a period of approximately one year from that time. Thereupon the plaintiff purchased a new rotary drilling rig at a cost of approximately $100,000, which rig was delivered to him in Sedgwick County, Kansas, early in the month of August, 1948."

The reasonable interpretation of the statement in the amended petition is that the defendants agreed that plaintiff should drill twenty wells for them in the Salter Pool under the terms of the letter agreement within a period of approximately a year.

Defendants argue that since the plaintiff successfully resisted their motion to require him to make his petition more definite and certain the petition should be strictly construed against him. This is the rule only when the motion is improperly overruled. (See *Walton v. Noel Co.*, 167 Kan. 274, 205 P. 2d 928.) Such was not the case here.

Defendants next argue that the contract pleaded was an oral one and shows on its face it was not to be performed within one year—hence violated the provisions of G. S. 1949, 33-106, and is not actionable. The statute quoted is what is known as the statute of frauds. It provides, in part:

"No action shall be brought . . . upon any agreement that is not to be performed within the space of one year from the making thereof, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing. . . ."

The oral contract upon which this action was brought was to be performed within approximately a year. Since the contract was to drill twenty wells a reasonable conclusion is that the performance of it was to commence and could have been completed before one year had elapsed. The argument of defendants is that unless the contract was to be completely performed within one year, then it

is not enforceable. The rule was stated in *Cassity v. Cassity*, 147 Kan. 411, 76 P. 2d 862, as follows:

"Unless an oral agreement discloses it cannot be performed within the space of one year, we cannot say the agreement violated the provisions of the statute."

In *Eastwood v. Eastwood*, 167 Kan. 471, 207 P. 2d 393, we said:

"Should it be argued by defendant that this contract violated the statute of frauds because performance could take longer than a year, the answer is, it was one which would admit of performance within a year—hence was not within the statute. (See Heery v. Reed, 80 Kan. 380, 102 Pac. 846.) Unless an oral contract discloses it cannot be performed within the space of one year we cannot say it violates the provisions of the statute of frauds. (See A. T. & S. F. Rld. Co. v. English, 38 Kan. 110, 16 Pac. 82; Pierson v. Milling Co., 91 Kan. 775, 139 Pac. 394; and Stahl v. Stevenson, 102 Kan. 447, 171 Pac. 1164.)"

(See, also, *Cannon v. Harris*, 161 Kan. 225, 166 P. 2d 998; *Bundy v. Liberty Life Ins. Co.*, 150 Kan. 658, 95 P. 2d 550; *Richard v. Kilborn*, 150 Kan. 579, 95 P. 2d 545; *Stahl v. Stevenson*, 102 Kan. 447, 171 Pac. 1164; *Pierson v. Milling Co.*, 91 Kan. 775, 139 Pac. 394; *Johnston v. Bowersock*, 62 Kan. 148, 61 Pac. 740; *Aiken v. Nogle*, 47 Kan. 96, 27 Pac. 825; and *Sutphen v. Sutphen*, 30 Kan. 510, 2 Pac. 100.

It follows that the contract pleaded here did not violate the statute.

The judgment of the trial court is affirmed.